PHUNG, APPELLEE, *v.* WASTE MANAGEMENT, INC. ET AL., APPELLANTS.

[Cite as Phung *v.* Waste Management, Inc. (1986), 23 Ohio St. 3d 100.]

(No. 84-1909—Decided April 16, 1986.)

*Murray & Murray Co., L.P.A., Dennis E. Murray* and *Kirk J. Delli Bovi,* for appellee.

*Bergson, Borkland, Margolis & Adler, Jeffrey G. Miller, Nicholas T. Christakos, Smith & Schnacke, John W. Edwards, Martin H. Lewis, Starn & Bowlus* and *John D. Starn,* for appellants.

*Bricker & Eckler, G. Roger King* and *Catherine Adams,* urging reversal for *amicus curiae,* Ohio Chamber of Commerce.

*Mid-America Legal Foundation, John M. Cannon, Susan W. Wanat* and *Ann Plunkett Sheldon,* urging reversal for *amicus curiae,* Ohio Manufacturers' Association.

*Louis A. Jacobs* and *Bruce A. Campbell,* urging affirmance for *amicus curiae,* American Civil Liberties Union of Ohio Foundation, Inc.

DAHLING, J. Ohio has long adhered to the general rule that "either party to an oral employment-at-will agreement may terminate the employment relationship for any reason which is not contrary to law." *Mers* v. *Dispatch Printing Co.* (1985), 19 Ohio St. 3d 100, 103. "* * * Employment contracts can be terminated at will for any cause, at any time whatsoever, even if done in gross or reckless disregard of any employee's rights." *Peterson* v. *Scott Constr. Co.* (1982), 5 Ohio App. 3d 203, 205; *Wolf* v. *First National Bank of Toledo* (C.P. 1980), 20 O.O. 3d 262, 263; *Dadas* v. *Prescott, Ball & Turben* (N.D. Ohio 1981), 529 F. Supp. 203, 206; *Parets* v. *Eaton Corp.* (E.D. Mich. 1979), 479 F. Supp. 512, 519 (construing Ohio law). A fundamental policy in favor of the employment-at-will doctrine is the principle that parties to a contractual relationship should have complete freedom to fashion whatever relationship they so desire.

While this court recently held "that where appropriate, the doctrine of promissory estoppel is applicable and binding to oral employment-at-will agreements" (*Mers, supra,* at 105), Ohio has not yet recognized any public policy exceptions to the employment-at-will doctrine. We do not believe that public policy considerations warrant an exception being made in the case *sub judice,* nor do they create a cause of action sounding in tort against the employer for wrongful discharge.

In the case *sub judice,* Phung's claims are nothing more than broad, conclusory allegations that Waste Management, Inc. was violating certain unspecified legal and societal obligations (complaint paragraph No. 5), that Phung directed Waste Management, Inc.'s attention to these violations (complaint paragraph No. 6), that Waste Management, Inc. terminated Phung's employment rather than cease the violations (complaint paragraph No. 7), and that the discharge was made in retaliation for Phung's demand that the violations cease (complaint paragraph No. 9).

In ruling on a motion to dismiss under Civ. R. 12(B)(6), the material allegations of the complaint are taken as admitted. *State, ex rel. Alford,* v. *Willoughby* (1979), 58 Ohio St. 2d 221 [12 O.O.3d 229]. In the context of a Civ. R. 12(B)(6) motion, the court is obliged to assume as true the factual allegations of the complaint. *Royce* v. *Smith* (1981), 68 Ohio St. 2d 106 [22 O.O.3d 332]. An appellate court may not assume as true or even consider facts alleged in a party's brief or attachments thereto. *Scheer* v. *Air-Shields, Inc.* (1979), 61 Ohio App. 2d 205 [15 O.O.3d 321].

The allegations herein failed to state a violation of a sufficiently clear public policy to warrant creation of a cause of action in favor of Phung. No jurisdiction has allowed a cause of action to proceed based only on vaguely alleged violations of "societal obligations."

Public policy does not require that there be an· exception to the employment-at-will doctrine when an employee is discharged for reporting to his employer that it is conducting its business in violation of law.

An at-will employee who is discharged for reporting to· his employer that it is conducting its business in violation of law does not have a cause of action against the employer for wrongful discharge.

Furthermore, the Ohio Constitution delegates to the legislature the primary responsibility for protecting the welfare of employees. Sections 34 and 35 of Article II authorize the General Assembly to adopt laws regulating minimum wages, health and safety and hours of labor and to provide a plan for workers' compensation. In the past, this court has deferred employment matters to the legislature. *State, ex rel. Clark,* v. *Brown* (1965), 1 Ohio St. 2d 121 [30 O.O.2d 478].

It should be noted that the legislature has addressed problems arising in the area of retaliatory discharge. The General Assembly has enacted legislation which provides that:

"* * * No employer shall discharge, demote, reassign, or take any punitive action against any employee because such employee filed a claim or instituted, pursued or testified in any proceedings under the workers' compensation act for an injury or occupational disease which occurred in the course of and arising out of his employment with that employer. * * *" R.C. 4123.90.

The legislature has also prohibited discriminatory practices in the discharge of employees, as follows:

"It shall be an unlawful discriminatory practice:

"(A)  For any employer, because of the race, color, religion, sex, national origin, handicap, age, or ancestry of any person, to discharge without just cause. * * *" R.C. 4112.02. There can be no better expression of the public policy of a state than duties specifically imposed by statute. See *Mers, supra,* at 103, fn. 2.

For reason of the foregoing, the judgment of the court of appeals is reversed and the judgment of the trial court granting the motion to dismiss is reinstated.

*Judgment reversed.*

CELEBREZZE, C.J., LOCHER, HOLMES and WRIGHT, JJ., concur.

SWEENEY and C. BROWN, JJ., dissent.

DAHLING, J., of the Eleventh Appellate District, sitting for DOUGLAS, J.

HOLMES, J., concurring. In accord with my comment in dissent to *Mers v. Dispatch Printing Co.* (1985), 19 Ohio St. 3d 100, 106-107, that

employment is presumed to be at will unless other contractual provisions expressly or impliedly provide otherwise, I hereby concur in this opinion.

CLIFFORD F. BROWN, J., dissenting. The court of appeals, by carving a public policy exception to the doctrine of at-will employment, would have had Ohio join what is already a clear majority of states which have carved similar exceptions, including the five states which border Ohio.[1] Today,

---

[1] In *West* v. *Roadway Express, Inc.* (1982), 8 OBR 155, the Summit County Court of Appeals at 161-162 found that some twenty-six states had adopted a cause of action for wrongful discharge:

"Our research has revealed a growing number of jurisdictions which have recognized or have indicated a willingness to recognize the public policy exception to the terminable-at-will doctrine, and have characterized the cause of action as one in tort. See *Reuther* v. *Fowler & Williams, Inc.* (1978), 255 Pa. Sup. 28, 386 A. 2d 119; *Geary* v. *U.S. Steel* (1974), 456 Pa. 171, 319 A. 2d 174; *McNulty* v. *Borden, Inc.* (E.D. Pa., 1979), 474 F. Supp. 1111; *Sventko* v. *Kroger Co.* (1976), 69 Mich. App. 644, 245 N.W. 2d 151; *Trombelta* [*sic Trombetta*] v. *Detroit, Toledo & Ironton R.R. Co.* (1978), 81 Mich. App. 489, 265 N.W. 2d 385; *O'Sullivan* v. *Mallon* (1978), 160 N.J. Super. 416, 390 A. 2d 149; *Pierce* v. *Ortho Pharmaceutical Corp.* (1980), 84 N.J. 58, 417 A. 2d 505; *Lally* v. *Copygraphics* (1980), 173 N.J. Super. 162, 413 A. 2d 960; *Nees* v. *Hocks* (1975), 272 Or. 210, 536 P. 2d 512; *Brown* v. *Transcon Lines* (1978), 284 Or. 597, 588 P. 2d 1087; *Adler* v. *American Standard Corp.* (1981), 290 Md. 615, 432 A. 2d 464; *Ward* v. *Frito-Lay, Inc.* (1980), 95 Wis. 2d 372, 290 N.W. 2d 536; *Sheets* v. *Teddy's Frosted Foods* (1980), 179 Conn. 471, 427 A. 2d 385; *Roberts* v. *Atlantic Richfield Co.* (1977), 88 Wash. 2d 887, 568 P. 2d 764; *Johnson* v. *National Beef Packing Co.* (1976), 220 Kan. 52, 551 P. 2d 779; *Harless* v. *First National Bank* (W. Va., 1978), 246 S.E. 2d 270; *Jones* v. *Keogh* (1979), 137 Vt. 562, 409 A. 2d 581; *Brower* v. *Holmes Transportation, Inc.* (Vt., 1981), 435 A. 2d 952; *Tameny* v. *Atlantic Richfield Co.* (1980), [27 Cal. 3d 167,] 164 Cal. Rptr. 839, 610 P. 2d 1330; *Kelsay* v. *Motorola Inc.* (1978), 74 Ill. 2d 172, 384 N.E. 2d 353; *Palmateer* v. *International Harvester, Inc.* [*sic Co.*] (1981), 85 Ill. 2d 124, 421 N.E. 2d 876; *Perks* v. *Firestone Tire and Rubber Co.* (C.A. 3, 1979), 611 F. 2d 1363.

"A few jurisdictions have held that a cause of action in tort for wrongful discharge is available, but only where the discharge is in direct violation of a statutory right or duty. See, *e.g., Frampton* v. *Central Indiana Gas Co.* (1973), 260 Ind. 249, 297 N.E. 2d 425; *Campbell* v. *Eli Lilly & Co.* (Ind., 1981), 421 N.E. 2d 1099; *Lampe* v. *Presbyterian Medical Center* (1978), 41 Colo. App. 465, 590 P. 2d 513; *Cantania* v. *Eastern Air Lines* [*sic Airlines*] (Fla. App. 1981) [*sic* 1980], 381 So. 2d 265.

"Other courts have held that a discharge in contravention of public policy creates a cause of action for wrongful discharge, but that the cause of action sounds in contract. See *Monge* v. *Beebe Rubber Co.* (1974), 114 N.H. 130, 316 A. 2d 549; *Howard* v. *Dorr Woolen Co.* (1980), 120 N.H. 295, 414 A. 2d 1273; *Fortune* v. *National Cash Register Co.* (1977), 373 Mass. 96, 364 N.E. 2d 1251; *M.B. M. Co.* v. *Counce* (1980), 268 Ark. 373 [*sic* 269], 596 S.W. 2d 681; *Chin* v. *American Telephone & Telegraph* (1978), 96 Misc. 2d 1070, 410 N.Y.S. 2d 737; and *Savodnik* v. *Korvettes, Inc.* (E.D. N.Y., 1980), 488 F. Supp. 822.

"Still other jurisdictions have indicated a willingness to recognize a cause of action for wrongful discharge, based on the public policy exception to the at-will doctrine, but have failed to designate whether such cause of action is a contract or a tort claim. See, *e.g., Scroghan* v. *Kraftco Corp.* (Ky. [App.], 1977), 551 S.W. 2d 811; *Jackson* v. *Minidoka Irrigation Dist.* (1977), 98 Idaho 330, 563 P. 2d 54; *Abrisz* v. *Pulley Freight Lines* (Iowa, 1978), 270 N.W. 2d 454; *Keneally* v. *Orgain* (Mont. 1980), 606 P. 2d 127; *Mau* v. *Omaha National Bank* (1980), 207 Neb. 308, 299 N.W. 2d 147; *Daniel* v. *Magma Copper Co.* (1980), 127 Ariz. [App.] 320, 620 P. 2d 699."

In addition I note, as did the court of appeals below, that recent scholarly commentaries

this court refuses to join that enlightened majority. I must vigorously dissent.

As noted in Judge Douglas' well-reasoned opinion below, the doctrine of at-will employment developed in a laissez-faire climate that encouraged industrial growth and strongly approved an employer's right to control his own business. That right necessarily encompassed the right to discharge an employee-at-will without cause. Although I am well aware that today's climate demands continued industrial growth, in my view, justice requires that an employer conduct business in a lawful manner. By holding that the at-will employment doctrine may be used as an effective vehicle to terminate the employment of an employee simply because he recognizes that his employer is disregarding regulations and statutes which are designed to protect the citizens of Ohio, this court wholeheartedly endorses the most basic injustice.

As the court below correctly recognized, the state has a legitimate interest in knowing that the regulations which protect Ohio's citizenry are complied with by the persons being regulated. Any legitimate attempt by an employee to serve that public interest should be heralded with applause, rather than scorned with the state's endorsement of the employee's retaliatory discharge.

It is argued that this court's prior decisions in *Henkel* v. *Educational Research Council* (1976), 45 Ohio St. 2d 249 [74 O.O.2d 415]; *Anderson* v. *Minter* (1972), 32 Ohio St. 2d 207 [61 O.O.2d 447]; and *Fawcett* v. *G.C. Murphy & Co.* (1976), 46 Ohio St. 2d 245 [75 O.O.2d 291], have already found unavailing the various public policy arguments in favor of recognition of a cause of action for wrongful discharge. However, those cases stand merely for the proposition that, *as a general rule,* the doctrine of employment-at-will retains its historic viability. To that extent, carving the important and, in my view, necessary exception for cases such as the one at bar would not change that general rule, *as* a general rule. In none of the aforementioned cases was this court faced with the kind of conduct in violation of clear public policy as Dr. Phung has alleged in this case.

In *Henkel,* the plaintiff alleged that she had been discharged in breach of her contract of employment. There, we held that, because the parties had not agreed upon a specific term of employment, there was no breach. In *Minter,* this court held that a complaint, filed in common pleas court by

---

are in overwhelming support of recognition of a cause of action for wrongful discharge. See *e.g.,* Blades, Employment At Will vs. Individual Freedom: On Limiting the Abusive Exercise of Employer Power (1967), 67 Colum. L. Rev. 1404; Note, A Common Law Action for The Abusively Discharged Employee (1975), 26 Hastings L.J. 1435; Comment, Protecting the Private Sector At Will Employee Who "Blows the Whistle": A Cause of Action Based Upon Determinants of Public Policy, 1977 Wis. L. Rev. 777; Peck, Unjust Discharges From Employment: A Necessary Change in the Law (1979), 40 Ohio St. L.J. 1; Note, Protecting At Will Employees Against Wrongful Discharge: Duty To Terminate Only In Good Faith (1986), 93 Harv. L. Rev. 1816; Comment, Wrongful Discharge of Employees Terminable at Will — A New Theory of Liability in Arkansas (1981), 34 Ark. L. Rev. 729.

a civil service employee in an effort to test the legality of a suspension order, failed to state a cause of action for which relief could be granted because R.C. 143.27 did not provide for an independent action to test whether cause existed for such a suspension. The plaintiff also sought recovery from her supervisor for tortious interference with her employment. As to that count, we held that plaintiff did not state a cause of action against the supervisor because the supervisor's acts complained of were within the scope of the supervisor's duties and, therefore, were unactionable. Finally, in *Fawcett,* as in *Minter,* this court had occasion to determine whether violation of a statute gave rise to an independent cause of action. In *Fawcett,* this court held that R.C. 4101.17 did not confer upon an employee an independent cause of action; rather, the Department of Industrial Relations was vested with the power and duty to enforce R.C. 4101.17 through the administrative process. This court dismissed the employee's further contention that employment-at-will was "limited by principles which protect persons from gross or reckless disregard of their rights and interests, willful, wanton, or malicious acts or acts done intentionally with insult, or in bad faith." *Fawcett,* at 249. Based on our earlier discussion regarding malice in *Minter,* the employee's claims were without merit. Thus, none of those cases presented facts on which this court could pass so as to permit an at-will employee to state a cause of action for wrongful discharge.

As the majority recognizes, because the trial court decided this case on defendants' motion to dismiss for failure to state a claim, the facts alleged in Phung's complaint must be taken as true for purposes of defendants' motion. However, the majority's conclusion that even if an exception to the doctrine of employment-at-will were recognized, the complaint at issue would be insufficient is clearly misguided. Indeed, despite the divided vote of the court of appeals below as to the propriety of judicial recognition of a tort for wrongful discharge as a public policy exception to the employment-at-will doctrine, there was no suggestion that, if such a cause of action were recognized in Ohio, the instant complaint would not be sufficient to state a cause of action.

Phung's complaint alleges that, during his two years of employment with defendants, he became aware that his employer was "violating, on a large scale basis, its *legal and societal* obligations" (emphasis added), and that Phung, after determining the "nature, extent, and duration" of such violations, called the violations to defendants' attention and demanded that the violations cease. In retaliation, defendants terminated Phung's employment. These allegations, and the inferences which can reasonably be drawn therefrom, clearly speak of conduct violative not only of Phung's rights, but also of the laws and fundamental public policies of the state of Ohio. I see no basis whatsoever for the majority's assertion that such a cause of action is not required by public policy; rather, the opposite is true.

The majority's blind assertion that "[n]o jurisdiction has allowed a

cause of action to proceed based only on vaguely alleged violations of 'societal obligations' " misses the point entirely. Phung's complaint was not so vague; rather, it alleged violations of both legal and societal obligations. But I am even more mystified by the majority's holding that "[p]ublic policy does not require that there be an exception to the employment-at-will doctrine when an employee is discharged for reporting to his employer that it is conducting its business in violation of law." The majority effectively ignores that Phung was employed in a toxic waste disposal facility, and that the operation of such facilities is subject to significant state regulation, compliance with which is mandated in the obvious interest of the citizens of Ohio. The clearest indication of the critical importance of that public interest comes from the legislative enactment of a crime in R.C. 3734.99(A) — violating the regulations on solid waste disposal sites is a felony. But Ohio law goes further yet: pursuant to R.C. 2921.22(A), failure to report a felony constitutes a misdemeanor. Thus, Phung was under an obligation imposed by Ohio's General Assembly to assist in enforcing Ohio's environmental protection laws.

Phung's response to his employer's malfeasance was both faithful to Ohio law and reasonable under the circumstances. Phung went to his employer and immediate supervisor, informed them of the violations, and demanded that the violations cease. For his laudable efforts, Phung was discharged. Out of apparent respect for his employer, Phung limited his objections to the appropriate chain of command within the company. This court, and the citizenry of Ohio, simply cannot tolerate an employer's retaliatory discharge of an employee under such circumstances.

The majority's reference to the Ohio Constitution to justify its deferral to the legislature would apparently ignore that Section 16 of Article I requires Ohio courts to "be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law * * *." As this court has held, in Ohio, "[i]t is the primary duty of courts to sustain this declaration of right and remedy wherever the same has been wrongfully invaded." *Kintz* v. *Harriger* (1919), 99 Ohio St. 240, paragraph two of the syllabus. This should particularly be the case as to the judicially created doctrine of employment-at-will.

Therefore, I would hold that an at-will employee who is discharged by his employer for reporting either to the employer or to proper authorities that the employer is doing business in a manner which contravenes the law may state a valid cause of action in tort for wrongful discharge where the discharge is in violation of public policy. As the Supreme Court of New Jersey noted when it adopted such a cause of action, that "public policy," although lacking in the definitive certainty which makes black letter law so inviting to apply, is discoverable in well-established sources: legislation; administrative rules, regulations, or decisions; and judicial decisions. Absent specific legislation, the *judiciary* must define the cause of action on a

case-by-case basis. *Pierce* v. *Ortho Pharmaceutical Corp.* (1980), 84 N.J. 58, 72, 417 A. 2d 505, 512.

The majority's refusal to recognize an exception to the doctrine of employment-at-will in cases of wrongful discharge where the discharge is in clear violation of the public policy of this state is, in my opinion, a travesty. Today, the majority insulates appellants from tort liability which should arise from actions taken in furtherance of a conspiracy of silence by which employees who speak up in the face of threatened environmental damage are effectively gagged by the threat of unemployment. Accordingly, I dissent.

SWEENEY, J., concurs in the foregoing dissenting opinion.