Tom C. **RHEINECKER, Plaintiff,**

v.

**FOREST LABORATORIES, INC., and Forest Pharmaceuticals, Inc., Defendants.**

**No. C–191–543.**

United States District Court, S.D. Ohio, W.D.

Jan. 27, 1993.

Theodore Newton Berry, Stanley Morris Chesley, Waite, Schneider, Bayless & Chesley, Cincinnati, OH, for plaintiff.

Paul Brent Calico, Strauss & Troy, Cincinnati, OH, Richard J. Schaeffer, Dornsbush, Mandelstam & Silverman, New York City, for defendants.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

SPIEGEL, District Judge.

This matter is before the Court on the Defendants' Motion for Summary Judgment (doc. 43), the Plaintiff's Response to the Defendants' Motion for Summary Judgment (doc. 49), the Defendants' Reply Memorandum (doc. 52), the Defendants' Memorandum of Law on the Jury Trial Issue (doc. 48), the Plaintiff's Memorandum in Support of Trial by Jury (doc. 51), the Defendants' Reply Memorandum (doc. 53), the Defendants' Notice of Filing of Copy of Cited Authority (doc. 54), and the Plaintiff's Supplemental Submission of Authority (doc. 55).

### BACKGROUND

The Defendants, Forest Laboratories, Inc., and Forest Pharmaceuticals, Inc., are engaged in the business of manufacturing and distributing a variety of pharmaceuticals including controlled substances. Among the controlled substances the Defendants manufacture are the drugs Paraldehyde ("PARAL") and Phendimetrazine Bitartrate ("METRA"). The Plaintiff was employed on an at-will basis by the Defendants as Director of Quality Assurance and Quality Control in Cincinnati. The Plaintiff's employment with the Defendants lasted from 1985 until his termination on March 1, 1991.

The Plaintiff claims that he became aware of two lots of PARAL which had failed a stability test. He claims that because the drug failed the stability test, the lots, which had been distributed in commerce, were "misbranded" and "adulterated" in violation of the Federal Food, Drug and Cosmetic Act ("FFDCA"), 21 U.S.C. §§ 351, 352. The Plaintiff asserts that he was terminated in retaliation for his insistence that the Defendants recall the defective lots of PARAL which had been distributed. The Plaintiff also claims that he was terminated due to his persistence that a missing quantity of METRA be reported as "diverted" or stolen, as opposed to lost due to spillage, as the Defendants insisted. Termination under such circumstances, the Plaintiff maintains, is a violation of Ohio Rev.Code § 4113.52 ("Whistleblower Act" or "Act"), Cincinnati Municipal Code Section 308–79, and a violation of the public policy exception to the employment-at-will doctrine.

The Defendants claim that this was an employment-at-will situation and that the Plaintiff was fired due to poor evaluations and poor performance. Furthermore, according to the Defendants, the Plaintiff is neither protected by the Whistleblower Act, nor Cincinnati Municipal Code Section

308–79. The Defendants also contend that the Whistleblower Act preempts the Plaintiff's public policy violation claim. The Defendants claim, therefore, that there are no material issues of fact in dispute, and thus, they are entitled to summary judgment as a matter of law. Finally, the Defendants assert that if summary judgment is not granted in their favor, the Plaintiff in this case is not entitled to a trial by jury.

## STANDARD OF REVIEW

The narrow question that we must decide on a motion for summary judgment, is whether there exists a "... genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court cannot try issues of fact on a Rule 56 motion, but is empowered to determine only whether issues exist that should be tried. *In re Atlas Concrete Pipe, Inc.*, 668 F.2d 905, 908 (6th Cir.1982).

The moving party "has the burden of showing *conclusively* that there exists no genuine issues as to a material fact and the evidence together with all inferences to be drawn therefrom must be read in the light most favorable to the party opposing the motion." *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir.) (emphasis in original), *cert. dismissed*, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979). Moreover, "while the movant's papers are to be closely scrutinized, those of the opponent are to be viewed indulgently." *Id.* at 63. "[T]he District Court [is] obligated to consider not only the materials specifically offered in support of the motion, but also all 'pleadings, depositions, answers to interrogatories, and admissions' properly on file and thus properly before [the] court." *Id.* (quoting Rule 56(c), Fed.R.Civ.P.).

Summary judgment "must be used only with extreme caution for it operates to deny a litigant his day in court." *Id.* The Supreme Court elaborated upon this standard, in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), as follows:

[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial....

*Id.* at 322, 106 S.Ct. at 2552. Summary judgment is not appropriate if a dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Nevertheless, conclusory allegations are not sufficient to defeat a motion for summary judgment. *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir.1990).

## THE PLAINTIFF'S WHISTLEBLOWER ACT CLAIMS

### a) PARAL

The Defendants assert that the Plaintiff has failed to comply with the requirements of the Whistleblower Act with respect to the PARAL and METRA incidents, and therefore is not protected by the Whistleblower Act. In order to trigger the protection of subsection (A)(1)(a) of the Whistleblower Act, the employee asserting the Act's protection must 1) become aware of a violation of any state or federal statute or any ordinance that his employer has the authority to correct; 2) orally notify the responsible officer of his employer; 3) file a written report which supplies sufficient detail to identify and describe the violation; and 4) give the employer 24 hours to address the violation before notifying the appropriate authorities. The Defendants claim that the Plaintiff failed to meet these requirements, and therefore does not qualify for protection under the Act.

According to the Defendants, the failure of the stability test of two lots of PARAL did not render the distributed quantity "mislabeled" or "adulterated" within the meaning of the FFDCA, as the Plaintiff contends. We disagree. A drug is "adulterated" in violation of the FFDCA if "its strength differs from, or its purity or quality fell below, that which it purports

to represent or possess." 21 U.S.C. § 351(c). Under the FFDCA a drug is adulterated when 1) there is a representation made in any manner, including written expressions and labeling, that a drug meets a given quality standard, and 2) the drug fails to meet that quality. *United States v. Torigian Laboratories, Inc.,* 577 F.Supp. 1514, 1524 (E.D.N.Y.), *aff'd* 751 F.2d 373 (2d Cir.1984); *see Dean Rubber Manufacturing Company v. United States,* 356 F.2d 161, 163 (8th Cir.1966).

■ The label "PARALDEHYDE U.S.P." indicates that the drug meets the standards established for PARAL by the United States Pharmacopeia ("U.S.P.").[1] Because the failure of the stability test demonstrated that the quality, strength and purity of the drug fell below the U.S.P. standards it purportedly met, the PARAL in question was "adulterated" as defined by the FFDCA. *See* 21 U.S.C. § 351(c); *Torigian,* 577 F.Supp. at 1524; *Dean Rubber,* 356 F.2d at 163; *United States v. Lanpar Company,* 293 F.Supp. 147, 154 (N.D.Texas 1968); *United States v. Articles of Food and Drug,* 444 F.Supp. 266, 274 (E.D.Wisc.1977).

■ Furthermore, a drug is "misbranded" "[i]f its labeling is false or misleading in any particular." 21 U.S.C. § 352(a). Thus, as the quality, strength and purity of the drug fell below U.S.P. standards, its labeling—"PARALDEHYDE U.S.P."—was false or misleading under the FFDCA. *See Torigian,* 577 F.Supp. at 1524; *Dean Rubber,* 356 F.2d at 163; *Lanpar,* 293 F.Supp. at 154; *Articles of Food and Drug,* 444 F.Supp. at 274. The PARAL in question was, therefore, "misbranded." *See* 21 U.S.C. § 352(a); *Torigian,* 577 F.Supp. at 1524; *Dean Rubber,* 356 F.2d at 163; *Lanpar,* 293 F.Supp. at 154; *Articles of Food and Drug,* 444 F.Supp. at 274.

■ Additionally, a violation of the FFDCA attaches without any proof of in-

tent, knowledge or awareness of wrongdoing. *United States v. Park,* 421 U.S. 658, 672–73, 95 S.Ct. 1903, 1911, 44 L.Ed.2d 489 (1975); *United States v. Articles of Drug,* 825 F.2d 1238, 1246 (8th Cir.1987); *Torigian Laboratories,* 577 F.Supp. at 1526. Stated most succinctly, the FFDCA "imposes strict liability for misbranding...." *Articles of Drug,* 825 F.2d at 1246. We therefore conclude that the distribution in commerce of a quantity of PARAL, a sample of which would subsequently fail a stability test, was a "violation" within the meaning of the Whistleblower Act.

■ Finally, the Defendants claim that the Plaintiff failed to adhere to the "written notification" requirement of the Whistleblower Act. The Plaintiff, however, sent a four page facsimile to his superiors in New York. The facsimile included a two page "Stability Assay Report" and a page from a lab notebook reporting the results of the failed stability test. The Defendants assert that this did not "provide[ ] sufficient detail to describe and identify ... [a] violation" as the Act requires. Ohio Rev. Code § 4113.52(A)(1)(a). The Plaintiff on the other hand, claims that the "New York executives who received and reviewed Plaintiff's written report were very familiar with stability testing and knowledgeable about the significance of the report." Plaintiff's Response to the Defendants' Motion for Summary Judgment, Doc. 49, at 7.

We believe this to be a material question of fact, not appropriate for determination on a motion for summary judgment. Furthermore, if this question of fact is determined in favor of the Plaintiff, the Plaintiff would fall within the Act's protective scope. Thus, another genuine issue of material fact would exist with respect to whether the Defendants violated the Act in firing the Plaintiff, or if he was fired for a legitimate reason under the employment-at-will doctrine.[2] The Defendants' Motion for

---

1. The United States Pharmacopeia is a legally recognized compendium of standards for drugs. It includes assays and tests for the determination of strength, quality and purity. It is published by the United States Pharmacopeia Convention and is revised periodically. Dorland's Medical Dictionary (25th ed. 1974).

2. We note that under the employment-at-will doctrine the employer has *virtually* unfettered discretion in terminating an employee. *See Greely v. Miami Valley Maintenance,* 49 Ohio

Summary Judgment regarding the PARAL incident must, therefore, be denied.

### b) METRA

■ The Defendants also claim that the Plaintiff has not met the requirements of the Whistleblower Act with respect to the METRA incident. We agree. The Plaintiff has failed to meet the requirements of Ohio Rev.Code § 4113.52(A)(1)(a), (3) & (B), which applies to the discovery and reporting of any unlawful activity by a fellow employee. The pertinent provision requires an employee to make a reasonable and good faith effort to determine the accuracy of any information reported regarding the possible unlawful activities of a fellow employee. Ohio Rev.Code § 4113.-52(B).

Here, the Plaintiff simply concluded, with little or no foundation, that some missing METRA pills had been stolen, as opposed to missing for a legitimate reason as the Plaintiff's superiors had concluded. Nine employees had access to the METRA: three lab technicians who were authorized to remove the drug from a secured vault, six others who were not authorized.

Of the nine employees who had access to the METRA, the Plaintiff only briefly interviewed four—the three authorized personnel, and one of the other employees. The Plaintiff concluded that none of those interviewed had stolen the tablets, yet concluded that someone else had, despite the fact that he made no further inquiry. We believe this was not a reasonable effort to determine the accuracy of the conclusion that the METRA had been stolen. Because the Plaintiff did not comply with the requirements of the Whistleblower Act in connection with the METRA incident, the Defendants are entitled to summary judgment on this claim.

### PLAINTIFF'S § 308–79 CLAIM

The Plaintiff has also sought relief under Cincinnati Municipal Code Section 308–79 ("Code"), Cincinnati's Whistleblower law. In order to fall within the scope of this section, an employee must disclose to, provide information to, or testify before a governmental agency. The Court is aware of no such pre-termination contact with a governmental agency, and thus the Plaintiff does not fall within the Code's protection. The Defendants are, consequently, entitled to summary judgment as a matter of law.

### PLAINTIFF'S PUBLIC POLICY CLAIM

■ In addition to his city and state Whistleblower claims, the Plaintiff also seeks relief under the public policy exception to the employee-at-will doctrine enunciated in *Greely v. Miami Valley Maintenance Contractors, Inc.,* 49 Ohio St.3d 228, 551 N.E.2d 981 (1990). The Defendants claim that the *Greely* exception is preempted by the Whistleblower Act.

In support of his proposition that the Whistleblower Act does not preempt a *Greely* action for whistleblower terminations, the Plaintiff relies on *Haynes v. Zoological Society of Cincinnati,* 567 N.E.2d 1048 (Court of Common Pleas, Hamilton County Ohio, 1990). With respect to the *Greely* claim in that case, the court stated, in its entirety, that the defendant's

> retaliation against ... [the Plaintiff] ... violated public policy which is expressly set forth in Ohio law and deeply ingrained in community and moral values. Pursuant to *Greely* ... [the Plaintiff] is entitled to recover tort damages for the ... [Defendant's] unlawful retaliation against her.

*Id.* at 1050. We find this analysis unpersuasive and contrary to Ohio statutory and case law discussed below. We therefore decline to follow its holding.

■ Under *Greely,* the public policy exception to the employment-at-will doctrine is available only under certain circumstances. The purpose of the exception is to preserve deeply rooted public policy objectives, and to enforce the legislative intent

---

St.3d 228, 234, 551 N.E.2d 981 (1990); *Phung v. Waste Management, Inc.,* 23 Ohio St.3d 100, 103, 491 N.E.2d 1114 (1986). The employment-at-will relationship "permits termination of employment for no cause or for 'any cause' which is not unlawful, at any time and regardless of motive." *Greely,* 49 Ohio St.3d at 234, 551 N.E.2d 981 (citing *Phung,* 23 Ohio St.3d 100, 491 N.E.2d 1114).

of statutes which address a public policy concern but provided no private right of action. *See Greely,* 49 Ohio St.3d at 231–33, 551 N.E.2d 981; *Ungrady v. Burns Intern. Sec. Services, Inc.,* 767 F.Supp. 849, 853 (N.D.Ohio 1991). Thus, under *Greely,* an employee-at-will has a private right of action for the tort of wrongful discharge if 1) his or her termination was in violation of either a statute or a deeply ingrained public policy, *and* 2) the legislature has not provided a private right of action. *Ungrady,* 767 F.Supp. at 853; *see Greely,* 49 Ohio St.3d at 231–33, 551 N.E.2d 981; *Bear v. Geetronics, Inc.,* 1992 WL 308309, at 4, 1992 Ohio App. LEXIS 5292, at 6 (12th Dept. Oct. 19, 1992). We hold that the *Greely* exception is not available to an employee-at-will terminated for whistleblowing.

First, the Whistleblower Act states, in part, "if an employer takes any disciplinary or retaliatory action against an employee" for whistleblowing, "the employee may bring a civil action" for any or all of the appropriate enumerated remedies. Ohio Rev.Code § 4113.52(D), (E). The Act, therefore, as the courts in *Ungrady* and *Bear* observed, provides an at-will employee who was terminated for whistleblowing with a private right of action. Ohio Rev. Code § 4113.52(D), (E); *Bear,* 1992 WL 308309, at 4, 1992 Ohio App. LEXIS 5292, at 6; *Ungrady,* 767 F.Supp. at 852.

Second, the termination of an employee-at-will for whistleblowing is not a concern "deeply ingrained" in the public policy of this state. In *Wing v. Anchor Media, Ltd. of Texas,* the Supreme Court of Ohio declined to recognize an independent public policy tort action under *Greely,* for whistleblowing. 59 Ohio St.3d 108, 111–12, 570 N.E.2d 1095, 1099–1100 (1991). Similarly, in *Phung v. Waste Management, Inc.,* a pre-*Greely* decision, the Ohio Supreme Court held that "[p]ublic policy does not require that there be an exception to the employment-at-will doctrine when an employee is discharged for reporting to his employer that it is conducting its business in violation of law." [3] 23 Ohio St.3d 100, 103, 491 N.E.2d 1114 (1986); *See also Phung v. Waste Management, Inc.,* 40 Ohio App.3d 130, 132, 532 N.E.2d 195 (1988).

Thus, absent the violation of a statute which does not provide a private right of action, a whistleblower termination does not give rise to an action under the *Greely* public policy exception. Therefore, allowing this type of action would undermine the purpose of the *Greely* public policy exception.

Additionally, in *Bear v. Geetronics, Inc.,* 1992 WL 308309, at 4, 1992 Ohio App. LEXIS 5292, at 6 (12th Dept. Oct. 19, 1992), the court found that the Whistleblower Act preempts a whistleblower action under the *Greely* exception. The court held that,

> the purpose of ... [the Whistleblower Act] is to allow employees to report an employer's unlawful activities without being terminated in retaliation by the employer. To achieve that objective, the statue establishes certain procedures which both the employer and employee must follow and provides for a private cause of action with a list of remedies. It is thus the express will of the General Assembly that actions similar to that instituted by the ... [Plaintiff] be brought pursuant to the ... [Whistleblower Act].... [W]e [thus] believe [the Whistleblower Act] preempts the formation of a public policy exception to the employment-at-will doctrine within the specific context of whistleblowing.

*Bear,* 1992 WL 308309 at 4, 1992 Ohio App. LEXIS 5292 at 6 (citation omitted). This observation echoes the conclusion reached by the court in *Ungrady* that, "[c]learly, the legislative intent [in enacting the Whis-

---

**3.** Refusing to recognize a public policy exception to the employment-at-will doctrine in whistleblower cases is not unique to Ohio courts. *See* Susan Sauter, Comment, *The Employee Health and Safety Whistleblower Protection Act and the Conscientious Employee: the Potential for Federal Statutory Enforcement of the Public*

*Policy Exception to Employment at Will,* 59 U.Cin.L.Rev. 513, 519, 519 n. 26 (1990) (observing that many states refuse to recognize a public policy exception to the employment-at-will doctrine in whistleblower cases and citing those states refusing to do so).

tleblower Act] was that actions similar to that of the Plaintiff would be brought pursuant ...." to the Whistleblower Act. 767 F.Supp. at 852–53.

In enacting the Whistleblower Act, therefore, the Legislature was clear in its purpose of creating a statutory exception to the employment-at-will doctrine for whistleblower terminations where none existed before. The Legislature was equally clear in its intention of tempering this exception with precisely enumerated procedural steps, and specifically limited remedies. We would thus be usurping the manifest Legislative intent, contrary to the reasoning and objectives enunciated in *Greely*, if we were to allow a *Greely* action in this case.

We therefore conclude, as did the *Bear* and the *Ungrady* courts, that it was "the express will of the General Assembly that actions ... [for whistleblower terminations] be brought pursuant to ..." the Whistleblower Act, and not in tort under the *Greely* exception. *Bear*, 1992 WL 308309, at 4, 1992 Ohio App. LEXIS 5292 at 6; *Ungrady*, 767 F.Supp. at 852. Consequently, we must grant the Defendants' Motion for Summary Judgment with respect to the Plaintiff's public policy claims.

### THE JURY TRIAL ISSUE

The Defendants also assert that the Plaintiff is not entitled to a trial by jury in this case. First, the Defendants contend that a plaintiff is not entitled to a jury under either the Whistleblower Act or ERISA. Furthermore, according to the Defendants, the breach of contract claim is preempted by the ERISA claim.

Although we agree with the Defendants that the Plaintiff has no right to a jury for his Whistleblower Act or ERISA claims, we believe the contract claim is not preempted by ERISA. Thus, the Plaintiff is entitled to a jury on the contract claim. Furthermore, with respect to the non-jury claims, the Court shall be bound by the jury's determination of the contract issues to the extent that they effect the Court's disposition of the accompanying equitable claims.

We find that Whistleblower Act does not entitle the Plaintiff to a jury trial. The Act only provides for equitable relief such as back pay and reinstatement. Ohio Rev.Code § 4113.52(E). The Plaintiff points out that in situations where reinstatement is not possible, an awarding of front pay should be made. As the Seventh Circuit observed, however, "front pay is an equitable [remedy because] ... it can be awarded only if reinstatement, clearly an equitable remedy, is impracticable." *Price v. Marshall Erdman & Associates, Inc.*, 966 F.2d 320, 325 (7th Cir.1992); *see also Erebia v. Chrysler Plastic Products Corp.*, 891 F.2d 1212, 1214 (6th Cir.1989).

Furthermore, although perhaps not controlling, the Act specifically speaks in terms of the *Court's* authority, not the jury's. Ohio Rev.Code § 4113.52. Thus, in the face of the enumerated equitable remedies and the language of the statute itself, the Court is not persuaded by the Plaintiff's argument that the Act gives rise to a right to trial by jury. We therefore hold that the Plaintiff is not entitled to a jury trial under the Whistleblower Act.

Similarly, we agree with the Defendants that the Plaintiff is not entitled to a jury trial under ERISA. *Bair v. General Motors Corp.*, 895 F.2d 1094, 1096 (6th Cir.1990); *Daniel v. Eaton Corp.*, 839 F.2d 263, 268 (6th Cir.), *cert. denied*, 488 U.S. 826, 109 S.Ct. 76, 102 L.Ed.2d 52 (1988). We disagree with the Defendants, however, in their assertion that the ERISA claim preempts the breach of contract claim. In support of this argument the Defendants cite *Daniel v. Eaton Corp.*, in which the court held that state law actions related to employee benefits are preempted by ERISA. 839 F.2d at 266. We find that the stock option agreement at the heart of the Plaintiff's contract claim is not so related to the Plaintiff's ERISA claim as to give rise to ERISA's preemptive effect.

Finally, because the contract claim is not preempted by the ERISA claim, the Plaintiff will be entitled to a jury trial in this case. The jury will determine facts germane to the contract claim, as well as issues common to the other claims. When

a party has a right to a trial by jury on an issue involved in a legal claim, the court is bound by the jury's determination of that issue as it affects the Court's disposition of an accompanying equitable claim. *Gutzwiller v. Fenik*, 860 F.2d 1317, 1333 (6th Cir.1988).

## CONCLUSION

Accordingly, consistent with the forgoing conclusions, the Court hereby GRANTS the Defendants' Motion for Summary Judgment with respect to the Plaintiff's Whistleblower Act claim concerning the drug METRA in Count I, the Plaintiff's Cincinnati Whistleblower claim in Count II, and the Plaintiff's *Greely* public policy claims also in Count II. The Court, however, DENIES the Defendants' motion with respect to the PARAL incident in Count I. Finally, we find the Plaintiff has a right to a jury trial for his contract claim in Count IV.

SO ORDERED.