DECISION AND JOURNAL ENTRY
Appellants, JoAnn McKnight and Kathleen Hartley, appeal the entry of summary judgment against them in the Lorain County Court of Common Pleas. We reverse in part and affirm in part.
Ms. McKnight, Ms. Hartley, and Susan Elioff were employees of Goodwill Industries, Incorporated ("Goodwill"), appellee. All three women worked at the Goodwill store located on North Abbe Road in Elyria, Ohio. Ms. McKnight was employed as the manager of the store. Beginning in February 1995, Ms. Elioff yelled at, threatened, and made inappropriate comments to and about several of her fellow employees, including Ms. McKnight and Ms. Hartley. Her inappropriate behavior continued in the form of periodic outbursts, culminating in the incident on Friday, May 22, 1998.
On Friday, May 22, 1998, Ms. Elioff screamed at Ms. McKnight and Ms. Hartley, among others, at an employee meeting and then informed Ms. McKnight and Ms. Hartley that she would not hit them at work but that she would "get them" outside of work. Ms. McKnight both orally complained to Barry Parker, Goodwill's Director of Security, and filed a written report of the incident with her supervisor, Ms. Carswell. The following weekend was a three-day weekend due to Memorial Day. Over the long weekend, Ms. Elioff threatened Ms. Hartley at an intersection near Ms. Hartley's home.
On the next working day, Tuesday, May 26, 1998, Ms. Hartley and Ms. McKnight went to the Elyria Police Department, apparently in lieu of a lunch break during the workday. They submitted complaints regarding Ms. Elioff's threats. The following day, they met with an attorney for the Elyria City Prosecutor's Office. On May 27, 1998, Kathleen A. Rednour of the Elyria City Prosecutor's Office informed Ms. Elioff by mail of the complaints that had been filed against her and that, if she continued threatening and harassing her fellow employees, she may be charged with aggravated menacing, in violation of R.C. 2903.21(A).
On May 29, 1998, Ms. Hartley and Ms. McKnight were suspended by Goodwill pending an investigation of the incident. On June 8, 1998, Ms. Hartley and Ms. McKnight were terminated by Goodwill after being told that they had violated Goodwill's policies by filing a complaint with the police without first notifying Goodwill management.
On September 24, 1998, Ms. Hartley and Ms. McKnight filed a complaint against Goodwill under the Whistleblower Protection Act, pursuant to R.C. 4113.51 et seq., and for termination of employment for a reason which is in contravention of public policy as set forth by the Ohio Supreme Court in Greeley v. Miami ValleyMaintenance Contrs., Inc. (1990), 49 Ohio St.3d 228. Goodwill filed a motion for summary judgment on July 23, 1999. On July 29, 1999, Ms. Hartley and Ms. McKnight filed a motion for partial summary judgment. Goodwill responded in opposition on August 30, 1999. The following day, Ms. Hartley and Ms. McKnight responded in opposition to Goodwill's motion for summary judgment. After further briefing, the trial court granted Goodwill's motion for summary judgment and denied Ms. Hartley and Ms. McKnight's motion for partial summary judgment on October 20, 1999. This appeal followed.
Appellants assert three assignments of error. As their assignments of error address different elements of the same analysis, we will consolidate them to facilitate review.
 First Assignment of Error The trial court erred in denying Plaintiffs-Appellants Motion for Partial Summary Judgment on their claim for tort [sic] of wrongful discharge in violation of public policy.
 Second Assignment of Error The trial court erred in granting summary judgment to Defendant-Appellee on Plaintiffs-Appellants' claim for tort [sic] of wrongful discharge in violation of public policy.
 Third Assignment of Error The trial court erred in granting summary judgment to Defendant-Appellee on Plaintiffs-Appellants' claim for violation of Ohio Revised Code § 4113.52, Ohio Whistleblower's Statute.
Appellants assert that the trial court erred in denying their motion for summary judgment as to their wrongful discharge in violation of public policy claim under Greeley, and in granting summary judgment in favor of Goodwill as to both that claim and their claim under R.C. 4113.51 et seq., which provides for the protection of whistleblowers. We find R.C.4113.51 et seq. inapplicable, and therefore, conclude that the trial court correctly granted summary judgment in favor of Goodwill on this claim. However, we agree that the trial court erred in granting summary judgment on appellants' claim for wrongful discharge in violation of public policy underGreeley.
Pursuant to Civ.R. 56(C), summary judgment is proper if:
 (1)No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.
 Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
Appellate review of a lower court's entry of summary judgment is de novo, applying the same standard used by the trial court.McKay v. Cutlip (1992), 80 Ohio App.3d 487, 491. The party seeking summary judgment initially bears the burden of informing the trial court of the basis for the motion and identifying portions of the record demonstrating an absence of genuine issues of material fact as to the essential elements of the nonmoving party's claims. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. The movant must point to some evidence in the record of the type listed in Civ.R. 56(C) in support of his motion. Id. Once this burden is satisfied, the nonmoving party has the burden, as set forth in Civ.R. 56(E), to offer specific facts showing a genuine issue for trial. Id. The nonmoving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that shows a genuine dispute over the material facts exists. Henkle v. Henkle (1991),75 Ohio App.3d 732, 735.
One is entitled to protection under the Ohio's Whistleblower's Protection statute,
 (a) If an employee becomes aware in the course of the employee's employment of a violation of any state or federal statute or any ordinance or regulation of a political subdivision that the employee's employer has authority to correct and if the employee reasonably believes that the violation either is a criminal offense that is likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety or is a felony, the employee orally shall notify the employee's supervisor or other responsible officer of the employee's employer of the violation and subsequently shall file with that supervisor or officer a written report that provides sufficient detail to identify and describe the violation. If the employer does not correct the violation or make a reasonable and good faith effort to correct the violation within twenty-four hours after the oral notification or the receipt of the report, whichever is earlier, the employee may file a written report that provides sufficient detail to identify and describe the violation with the prosecuting authority of the county or municipal corporation in which the violation occurred, with a peace officer, with the inspector general if the violation is within the inspector general's jurisdiction, or with any other appropriate public official or agency that has regulatory authority over the employer and the industry, trade, or business in which the employer is engaged.
 (b) If an employee makes a report under division (A)(1)(a) of this section, the employer, within twenty-four hours after the oral notification was made or the report was received or by the close of business on the next regular business day following the day on which the oral notification was made or the report was received, whichever is later, shall notify the employee, in writing, of any effort of the employer to correct the alleged violation or hazard or of the absence of the alleged violation or hazard.
(Emphasis added.) R.C. 4113.52(A)(1). One "must strictly comply with the dictates of R.C. 4113.52." Contreras v.Ferro Corp. (1995), 73 Ohio St.3d 244, syllabus. Further,
 [a]n at-will employee who is discharged or disciplined in violation of the public policy embodied in R.C. 4113.52 may maintain a common-law cause of action against the employer pursuant to Greeley v. Miami Valley Maintenance Contrs., Inc. (1990), 49 Ohio St.3d 228, 551 N.E.2d 981, and its progeny, so long as that employee had fully complied with the statute and was subsequently discharged or disciplined. (Greeley, supra, approved; Painter v. Graley [1994], 70 Ohio St.3d 377, 639 N.E.2d 51, paragraphs two and three of the syllabus, approved; Phung v. Waste Mgt., Inc. [1986], 23 Ohio St.3d 100, 23 OBR 260, 491 N.E.2d 1114, overruled.)
 Kulch v. Structural Fibers, Inc. (1997), 78 Ohio St.3d 134, paragraph three of the syllabus.
If an individual's termination is for a reason that is in violation of public policy, but is independent of the public policy embodied in R.C. 4113.51 et seq., one may bring suit underGreeley alone without complying with R.C. 4113.52. Kulch,78 Ohio St.3d at 162. To establish the common law cause of action for wrongful termination in violation of public policy set forth in Greeley, four-elements must be satisfied:
 "1. That [a] clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element).
 2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element).
 3. The plaintiff's dismissal was motivated by conduct related to the public policy (the causation element).
 4. The employer lacked overriding legitimate business justification for the dismissal (the overriding justification element)." (Emphasis sic.)
 Painter, 70 Ohio St.3d at 384, fn. 8, quoting H. Perritt, The Future of Wrongful Dismissal Claims: Where Does Employer Self Interest Lie? (1989), 58 U.Cin.L.Rev. 397, 398-99 (reaffirmed in Kulch, 78 Ohio St.3d at 150-51).
In short, one may bring a claim under one or all of the following: (1) R.C. 4113.51 et seq. alone; (2) Greeley based on the public policy embodied in R.C. 4113.51 et seq., so long as one follows the procedures set forth in R.C. 4113.51 et seq.; and/or (3) Greeley based on the public policy embodied in other sources such as the Ohio and United States Constitutions, common law, and administrative rules and regulations. Kulch,78 Ohio St.3d at 150.
 The Applicable Cause of Action
Construing the facts in a light most favorable to the nonmoving party, the facts before us present a cause of action under the common law tort of wrongful termination based on a violation of public policy (a Greeley claim), but not a claim pursuant to R.C. 4113.51 et seq. or, by extension, a Greeley claim based on the public policy of R.C. 4113.51 et seq. Before proceeding with our analysis of this issue, we note that there is a dearth of precedent on this issue and that which exists presents an almost impenetrable bramble of legal analysis. Although the trial court presented a well-reasoned analysis of the law, we conclude that a different analysis is appropriate.
In construing a statute, "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage. Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly." R.C. 1.42. R.C.4113.51 et seq. covers only those violations of law which the employer "has authority to correct[.]" R.C. 4113.52(A)(1)(a). An employer's authority is his or her "[r]ight to exercise powers; * * * to exact obedience; to command" or his or her power to control the employee. Black's Law Dictionary (6 Ed.Rev. 1990) 133. "Correct" means "to make or set right[.]" Webster's Third New International Dictionary (1993) 511.
While Goodwill had authority to correct Ms. Elioff's conduct in work related matters, it could not correct her intentional tortious — and possibly criminal — behavior toward another employee, for that was beyond the scope of her employment. See Osborne v.Lyles (1992), 63 Ohio St.3d 326, 329-30, quoting Vrabel v. Acri
(1952), 156 Ohio St. 467, 474 ("In general, `an intentional and willful [sic] attack committed by an agent or employee, to vent his own spleen or malevolence against the injured person, is a clear departure from his employment and his principal or employer is not responsible therefor.'"). Moreover, by its terms, R.C.4113.51 et seq. was intended to operate where the tort was under the control of the employer rather than an intentional act of one employee directed against a fellow employee. See R.C.4113.52(A)(1)(a).
"The General Assembly is presumed not to intend any ridiculous or absurd results from the operation of a statute which it enacts, and, if reasonably possible to do so, statutes must be construed so as to prevent such results." State ex rel. Haines v.Rhodes (1958), 168 Ohio St. 165, paragraph two of the syllabus. If we were to find R.C. 4113.51 et seq. applicable, one would have to give one's employer twenty-four hours to correct a fellow employee's violation of law at work, although the violation of law is unconnected with the purposes of his employment or the interests of the employer. See R.C. 4113.52. Such a requirement is as illogical as it is dangerous because it discourages employees from reporting threatening and violent behavior to law enforcement agencies, and because the employer lacks authority while the legislature has vested law enforcement agencies with such authority. See, e.g., R.C. 2903.21.
Here, Ms. Elioff's threats are alleged by appellants to have occurred both at the job site and away from the job site over the Memorial Day weekend. The threats were not made in furtherance of work which Ms. Elioff was doing for Goodwill, but were personal in nature and may have constituted aggravated menacing, in violation of R.C. 2903.21(A). Moreover, when the threats were reported to Goodwill, appellants were informed by Goodwill to "watch [their] backs" not that Goodwill would or could correct the problem. The legislature clearly intended R.C. 4113.51 et seq. to apply in cases where an employee witnessed his or her employer dumping toxic effluent, maintaining a hazardous job site, or the like, rather than in situations where one employee threatens or commits violence against another employee. Accordingly, we hold that this case is governed by Greeley alone and is one pursuant to the common law cause of action set forth therein. We find R.C.4113.51 et seq. inapplicable because the threats were not within the control of the employer, but rather were intentional, possibly criminal, conduct of one employee directed against another employee. See R.C. 4113.52.
Summary Judgment
We will first address the trial court's entry of summary judgment against appellants on appellants' claim under R.C.4113.51 et seq. and/or under Greeley for a violation of the public policy embodied in R.C. 4113.51 et seq. "[A] reviewing court is not authorized to reverse a correct judgment merely because erroneous reasons were assigned as a basis thereof." State exrel. Carter v. Schotten (1994), 70 Ohio St.3d 89, 92. As discussed above, R.C. 4113.51 et seq. is not applicable here. Therefore, we hold that the trial court did not err in granting summary judgment against appellants on their claim under R.C.4113.51 et seq., and on their claim under Greeley for a violation of the public policy embodied in R.C. 4113.51 et seq., as R.C.4113.51 et seq. is inapplicable.
We must now proceed to determine if the trial court properly granted summary judgment against appellants on appellants' Greeley
claim based on the public policy embodied in Ohio's criminal statutes and the common law. Upon review of the record currently before us, appellants' claim under Greeley presents genuine issues of material fact for trial. First, we must ask whether a clear public policy favors the reporting of crimes. See Kulch,78 Ohio St.3d at 151. We conclude that a clear public policy does exist in favor of reporting crimes and preventing the escalation of crimes, and accordingly, we answer in the affirmative. Next, we must ask if dismissal for reporting possible criminal behavior of one employee directed at another while at work would jeopardize that public policy. Id. Again, we must answer in the affirmative. Finally, we must ask whether appellants' dismissals were motivated by conduct related to the public policy and whether Goodwill possessed an overriding legitimate business justification for the dismissal. Id. Upon review of the record before us, we conclude that these represent genuine issues of material fact for the jury. Appellants present evidence that their dismissals were motivated by their report of Ms. Elioff's behavior to law enforcement authorities, while Goodwill presented evidence that their dismissals were motivated by appellants' failure to clock in and out when they went to report Ms. Elioff's threats and their failure to follow other Goodwill policies. Accordingly, we conclude that material issues of fact remain as to appellants'Greeley claim.
Appellants' assignments of error are sustained to the extent that they aver that the trial court erred in granting summary judgment against them on their claim pursuant to Greeley. The appellants' assignments of error are overruled to the extent that they aver that the trial court erred in granting summary judgment as to their claim under R.C. 4113.51 et seq. and that the trial court erred in failing to grant summary judgment to them on theirGreeley claim.
The Lorain County Court of Common Pleas entry of summary judgment on appellants' claim under R.C. 4113.51 et seq. is affirmed and the trial court's entry of summary judgment as to appellants' claim pursuant to Greeley is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed equally to both parties.
Exceptions.
 ___________________________ WILLIAM G. BATCHELDER
FOR THE COURT, BAIRD, J., WHITMORE, J., CONCUR.