This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant-defendant Goodyear Tire Rubber Co. ("Goodyear") appeals the judgment of the Summit County Court of Common Pleas, finding Goodyear liable for wrongful termination in violation of public policy. This Court reverses.
Appellee-plaintiff Bruce G. Van Sweden was an Account Executive with Goodyear in Detroit, Michigan. In 1996, Van Sweden was involved in discussions for temporary reassignment to Akron in connection with the implementation of a new software program. Van Sweden advised Goodyear that he was not interested in a permanent relocation to Akron since his wife had a good job in Michigan, and was against relocating for the temporary assignment to Akron. Out of deference to Van Sweden's marital status, Goodyear officials agreed to a special arrangement beyond its typical payment to full relocation: Van Sweden was provided an Akron apartment and his travel expenses (mileage, meals, and tolls) back to Michigan to see his wife on the weekends were to be reimbursed. Management also tolerated Van Sweden's early Friday departures and late Monday arrivals.
In January of 1997, Van Sweden separated from his wife, and moved to Kalamazoo, Michigan with his son. The divorce was finalized on January 29, 1998. Van Sweden never advised Goodyear of this change, but still availed himself of the special arrangement from July, 1997 through August, 1999. In 1998, Van Sweden advised a fellow employee of the separation, after instructing her to keep his secret because of his good deal with Goodyear. By August of 1999, Goodyear management learned of Van Sweden's divorce. After meeting with Van Sweden on August 11, 1999, Goodyear terminated him for continuing to avail himself of the special arrangement by concealing his divorce.
On October 1, 1999, Van Sweden sued Goodyear for invasion of privacy and wrongful termination in violation of public policy. Goodyear counter-claimed against Van Sweden for fraudulent concealment. The matter proceeded to trial, and the jury returned a verdict in favor of Van Sweden's claim of wrongful termination in violation of public policy, and found against the remaining claims. The jury awarded Van Sweden $140,000 in damages.
Goodyear timely appealed, asserting four assignments of error.
 ASSIGNMENT OF ERROR I "THE TRIAL COURT ERRED IN FAILING TO DIRECT A VERDICT IN FAVOR OF GOODYEAR ON PLAINTIFF'S PUBLIC POLICY CLAIM."
 ASSIGNMENT OF ERROR II "THE TRIAL COURT ERRED IN FINDING THAT A PUBLIC POLICY EXISTED IN THIS CASE WHICH WAS POTENTIALLY VIOLATED."
The foregoing assignments of error are considered together as they raise similar issues of law and fact.
In its first and second assignment of error, Goodyear claims the trial court erred in concluding that Van Sweden stated a lawful claim of wrongful termination in violation of public policy based on his changed marital status. This Court agrees.
Traditionally, the common law employment-at-will doctrine allowed an employer to terminate the employment of his worker "`at will for any cause, at any time whatsoever, even if done in gross or reckless disregard of [an] employee's rights.'" Painter v. Graley (1994),70 Ohio St.3d 377, 382, quoting Phung v. Waste Mgt., Inc. (1986),23 Ohio St.3d 100, 102, quoting Peterson v. Scott Constr. Co., (1982),5 Ohio App.3d 203, 205.
The Ohio Supreme Court has recognized an exception to the traditional employment-at-will doctrine in Ohio common law. A discharged employee has a private cause of action sounding in tort for wrongful discharge where his or her discharge is in contravention of a clear public policy.Painter, supra, at paragraph two of the syllabus. The existence of such a public policy may be discerned by the Ohio judiciary based on sources such as the Constitutions of Ohio and the United States, legislation, administrative rules and regulations, and the common law." Id. at 384. InPainter, the Ohio Supreme Court prescribed a useful test when reviewing cases of wrongful termination in violation of public policy: (1) clear public policy existed and was manifest in a state or federal constitution, statute or regulation, or in common law; (2) dismissing employees under such circumstances would jeopardize the public policy; (3) the plaintiff's termination was motivated by conduct related to the public policy; and (4) the employer lacked overriding business justification for the dismissal. Id. at 384, fn. 8.
R.C. 4112.02(A) enumerates protected categories upon which an employment decision cannot be based, and absent from these protected categories is a change in marital status. The omission is dispositive of this case:
 "We note that the General Assembly has not remained silent on the respective rights of unclassified employees and their employers, but rather has enacted several statutes as legislative statements of public policy in this area. Where the General Assembly has spoken, and in so speaking violated no constitutional provision, the courts of this state must not contravene the legislature's expression of public policy. "Judicial policy preferences may not be used to override valid legislative enactments, for the General Assembly should be the final arbiter of public policy." State v. Smorgala (1990), 50 Ohio St.3d 222, 223, 553 N.E.2d 672, 674." Id. at 385.
This court defers to the General Assembly in R.C. 4112.02(A), and honors the Ohio Supreme Court holding in Painter, in concluding that Van Sweden has failed to demonstrate that a clear public policy was implicated by his termination.
Even if Van Sweden demonstrated that clear public policy was violated based upon termination for his marital status, his claim would still fail. Not surprisingly, there is no evidence in the record that Goodyear had undertaken a marital status inquisition of its employees, intent on ousting divorcees like Van Sweden. Rather, Van Sweden's marital status was a mere back drop for his primary offense — his lack of candor in revealing the termination of his marriage, the condition upon which his special arrangement with Goodyear was based.
Accordingly, Goodyear's first and second assignments of error are sustained. The judgment of the trial court relating to the cause of action for wrongful termination in violation of public policy is reversed.
 ASSIGNMENT OF ERROR III "THE TRIAL COURT IMPROPERLY INSTRUCTED THE JURY ON PLAINTIFF'S PUBLIC POLICY CLAIM."
 ASSIGNMENT OF ERROR IV "THE JURY'S VERDICT IN FAVOR OF THE PLAINTIFF ON THE PUBLIC POLICY CLAIM WAS SUPPORTED BY COMPETENT SUBSTANTIAL AND CREDIBLE EVIDENCE."
Pursuant to the disposition of the first and second assignment of error, this Court need not address the remaining assignments of error. See. App.R. 12(A)(1)(c).
Judgment reversed.
SLABY, P.J., BATCHELDER, J. CONCUR