TULLOH, APPELLANT, *v.* GOODYEAR ATOMIC CORPORATION ET AL., APPELLEES.

[Cite as *Tulloh v. Goodyear Atomic Corp.* (1992), 62 Ohio St.3d 541.]

(No. 90–2149—Submitted November 20, 1991—
Opinion announced February 12, 1992.)

*Stewart Jaffy & Associates Co., L.P.A., Stewart R. Jaffy* and *Marc J. Jaffy; Waite, Schneider, Bayless & Chesley Co., L.P.A.,* and *Paul DeMarco,* for appellant.

*Vorys, Sater, Seymour & Pease, Robert E. Tait* and *James P. Kennedy,* for appellees.

*Ronald D. Major,* urging reversal in part for *amicus curiae,* Ohio Academy of Trial Lawyers.

MOYER, C.J. This case presents two issues: (1) whether the trial court erred in granting appellees' Civ.R. 12(B)(6) motion to dismiss appellant's claim for intentional tort; and (2) whether the trial court erred in granting appellees' Civ.R. 12(B)(6) motion to dismiss appellant's allegation of wrongful discharge. For the following reasons, we hold that appellees' Civ.R. 12(B)(6) motion was improperly granted on both counts. We therefore reverse the judgment of the court of appeals regarding the intentional tort claim and affirm its judgment regarding the wrongful discharge claim.

## I

### Intentional Tort

In his complaint, appellant stated:

"8. Plaintiff was exposed to hazardous radioactive dust, chips and fumes due to his position as a uranium materials handle [*sic*] for Defendants.

"9. Defendants failed to exercise their duties to establish, maintain and control health and safety standards at the Plant.

"10. Defendant Goodyear concealed critical information and knowledge concerning the injurious effect exposure to the uranium materials being processed at the Plant would have on Plaintiff.

"11. Defendants knew, or should have known, that exposure to uranium and other radioactive materials posed a severe health hazard to Plaintiff.

"12. Defendants intentionally and willfully continued to expose Plaintiff to said health hazards, failed to warn Plaintiff of the hazards, and concealed critical information from Plaintiff and others concerning the work environment.

"13. Defendants['] actions were intentional, willful and committed with an intent to injure and with the belief that injury was substantially certain to occur.

"14. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered from sinusitis, pharyngitis, laryngitis, abdominal plain [*sic* ], cramping, vomiting, nausea and extreme upper respiratory and gastrointestinal dysfunction, as well as emotional pain and suffering."

After reviewing the complaint, the court of appeals held that:

"Essentially, in the case *sub judice,* appellant's cause of action alleging an intentional tort is as deficient in facts as was the complaint in *Mitchell* * * * [*v. Lawson Milk Co.* (1988), 40 Ohio St.3d 190, 532 N.E.2d 753] wherein the Supreme Court affirmed a dismissal of the complaint for failure to state a claim upon which relief may be granted. Likewise, we hold that appellant failed to state a claim upon which relief could be granted under either the common law standard of intentional tort or the statutory standard."

As noted by the court of appeals, this court has addressed the pleading requirements in an intentional tort claim against an employer in *Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St.3d 190, 532 N.E.2d 753. In the syllabus of that case, we held that:

"A claim of intentional tort against an employer will be dismissed as failing to establish that the pleader is entitled to relief unless the complaint alleges facts showing that the employer: (1) specifically desired to injure the employee; or (2) knew that injury to an employee was certain or substantially certain to result from the employer's act and, despite this knowledge, still proceeded."

In *Mitchell,* however, the case arose out of the fatal shooting of a clerk who worked in a Lawson Milk Company ("Lawson") store. The complaint alleged that Lawson had committed an intentional tort by failing to provide adequate security or training in handling violent situations. In *Mitchell,* we found that:

" * * * The facts are easy to grasp and are undisputed: a death resulted from the hold-up of a convenience store. Even if Lawson failed to equip its

stores with security devices or provide its employees with training in handling violent situations, it does not follow that Lawson knew that injury to its employees was certain, or substantially certain, to result. This is so, even if we assume that the Lawson store was in a high-crime-rate area." *Id.* at 192–193, 532 N.E.2d at 756.

When construing a complaint upon a motion to dismiss for failure to state a claim, it is presumed that all factual allegations in the complaint are true and it must appear beyond doubt that the plaintiff can prove no set of facts warranting recovery. *O'Brien v. Univ. Community Tenants Union* (1975), 42 Ohio St.2d 242, 71 O.O.2d 223, 327 N.E.2d 753, syllabus. In *Mitchell*, it was found that when all the facts were taken as true, there could be no recovery. This is not the situation in the case at bar. Tulloh alleged that appellees knew that exposure to radioactive materials at the plant would be hazardous, and that appellees intentionally concealed this information from Tulloh with the knowledge that injury was substantially certain to occur. Accepting these allegations as true, as we must, Tulloh's complaint fulfills the requirements necessary to state a claim of intentional tort. As was stated in *Fyffe v. Jeno's, Inc.* (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108, paragraph two of the syllabus: "To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk—something short of substantial certainty—is not intent." While Tulloh ultimately states in his complaint his conclusion that appellees' acts were intentional, the factual allegations in the complaint also lead to the same conclusion.

The court of appeals erred by failing to take appellant's allegations in his complaint as true for the purposes of the Civ.R. 12(B)(6) motion. Appellant averred in his complaint that appellees concealed information regarding the dangers of the radioactive materials after appellees became aware of the risks. The court of appeals stated that: " * * * These are mere conclusions supported by no underlying facts. * * * " What the court of appeals in fact is requiring is that a plaintiff provide, along with his complaint, proof that the allegations are true. Whether appellees concealed information knowing that injury was substantially certain to occur would certainly be a disputed issue at

trial, but there is no requirement that all evidence supporting these allegations be filed with the plaintiff's complaint. Under the applicable test, appellant's complaint was sufficient to withstand a 12(B)(6) motion for dismissal.

There is, of course, no need to discuss statutory pleading requirements in light of our decision in *Brady v. Safety–Kleen Corp.* (1991), 61 Ohio St.3d 624, 576 N.E.2d 722.

## II

### Wrongful Discharge

The court of appeals correctly held that appellant's wrongful discharge claim could be treated as a claim for breach of an employment contract. The trial court held that this claim would be preempted by Section 301 of the Labor–Management Relations Act, Section 185, Title 29, U.S.Code, since appellant was a member of the local collective bargaining unit. While this fact was alleged in appellees' memorandum in support of dismissal, it was never averred in the complaint. Because a ruling on a motion for dismissal is limited to the facts alleged in the complaint, the trial court improperly considered appellant's membership in the collective bargaining unit and, therefore, improperly dismissed the wrongful discharge claim based on breach of contract.

Before the court of appeals and now before this court, appellant has argued that his wrongful discharge claim may be brought in tort. He asserts that Marietta terminated him in retaliation for voicing his concerns about safety violations at the plant. The claim is not brought pursuant to R.C. 4113.52 but, rather, on the basis of what appellant alleges to be common-law authority.

Appellant's assertion of a broader common-law duty which was breached by Marietta is unsupported. The lack of such a duty was recognized by this court in *Phung v. Waste Management, Inc.* (1986), 23 Ohio St.3d 100, 23 OBR 260, 491 N.E.2d 1114. Notwithstanding our holding in *Phung*, appellant asserts that this court's decision in *Greeley v. Miami Valley Maintenance Contractors, Inc.* (1990), 49 Ohio St.3d 228, 551 N.E.2d 981, provides him a basis for recovery in tort despite the fact that R.C. 4113.52 had not yet been enacted when appellant was terminated. Appellant misconstrues the *Greeley* decision. In *Greeley*, we held that a civil remedy is available for an employer's discharge of an employee in violation of R.C. 3113.213(D). In *Greeley*, we stated:

"In *Phung*, we held that public policy does not require that there be an exception to the employment-at-will doctrine, absent a sufficiently clear public

policy warranting the creation of a cause of action. *Id.* [23 Ohio St.3d] at 102, 23 OBR at 262, 491 N.E.2d at 1116–1117. In the case at bar, the General Assembly has enacted a statute prohibiting the specific conduct engaged in by appellee[-employer]. Such pronouncement provides the clearly sufficient authority to warrant the exception referenced in *Phung.*" *Id.*, 49 Ohio St.3d at 233, 551 N.E.2d at 986.

In the case at bar, appellant averred no violation of statute. In fact, R.C. 4113.52 had not yet been enacted at the time of appellant's termination, and that statute is not retroactive. Absent statutory authority, there is no common-law basis in tort for a wrongful discharge claim.

For the foregoing reasons, the judgment of the court of appeals is reversed in part and affirmed in part, and the cause is remanded to the trial court for further proceedings.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

STRAUSBAUGH, WRIGHT and SHAW, JJ., concur.

SWEENEY, DOUGLAS and RESNICK, JJ., concur in part and dissent in part.

DEAN STRAUSBAUGH, J., of the Tenth Appellate District, sitting for HOLMES, J.

STEPHEN R. SHAW, J., of the Third Appellate District, sitting for H. BROWN, J.

DOUGLAS, J., concurring in part and dissenting in part. I agree with the discussion in Part I of the majority opinion and the conclusion reached therein that appellees' Civ.R. 12(B)(6) motion to dismiss was improperly granted with respect to appellant's intentional tort claim. I also agree with the majority that the court of appeals correctly determined that appellant's wrongful discharge claim " * * * could be treated as a claim for breach of an employment contract * * *," and that appellant's wrongful discharge claim was improperly dismissed. However, I do not agree with the syllabus law in this case or the majority's discussion in Part II of its opinion in support of the syllabus. Specifically, I strongly disagree with the majority's discussion concerning *Greeley v. Miami Valley Maintenance Contrs., Inc.* (1990), 49 Ohio St.3d 228, 551 N.E.2d 981.

In *Greeley,* at paragraph one of the syllabus, this court recognized a public policy exception to the employment-at-will doctrine based upon a violation of a specific statute. Thus, when an employer discharges an employee in violation of a specific statutory provision, a cause of action arises for the tort of wrongful discharge. *Id.* at paragraph three of the syllabus.

In the case at bar, appellant was discharged prior to the enactment of R.C. 4113.52 and, thus, the conduct of appellee Martin Marietta Energy Systems, Inc. ("Marietta") in discharging appellant did not (as it could not) give rise to a violation of R.C. 4113.52. Therefore, when the majority (citing *Greeley*) holds that appellant may not maintain an action against Marietta for wrongful discharge sounding in tort, since no violation of R.C. 4113.52 occurred, the majority is, of course, engaging in a *non sequitur.* Further, *Greeley* clearly does not support the majority's conclusion that the tort of wrongful discharge *must* be based solely upon a violation of a specific statutory provision. In *Greeley*, we also stated that:

"Today, we only decide the question of a public policy exception to the employment-at-will doctrine based on violation of a specific statute. *This is not to say that there may not be other public policy exceptions to the doctrine but, of course, such exceptions would be required to be of equally serious import as the violation of a statute."* (Emphasis added.) *Id.* at 234–235, 551 N.E.2d at 987.

Here, appellant has alleged that he was fired for voicing his objections about an unsafe work environment, and for demanding that Marietta comply with certain requirements of the law. In my judgment, public policy clearly demands that a safe workplace be provided, that unsafe working conditions be corrected and that employees who voice concerns aimed at correcting unsafe working conditions are entitled to protection against retaliatory measures. The relatively recent enactment of R.C. 4113.52 supports this conclusion as do a number of other statutes and constitutional provisions favoring safety in the workplace. See, *e.g.,* Sections 34 and 35, Article II of the Ohio Constitution; R.C. 4101.12 (duty of employer to maintain a safe place of employment); R.C. 4121.13 (safety and investigative duties of the Administrator of Workers' Compensation); and R.C. 4121.17 (duty of the Bureau of Workers' Compensation to investigate petitions alleging unsafe employment or places of employment). See, also, R.C. 4107.07, 4107.09 and 4107.23.

I believe that where, as here, the policy of this state is clear, a violation of that public policy warrants an exception to the doctrine of employment at will. Since we must accept, for purposes of a Civ.R. 12(B)(6) motion, appellant's assertions to be true, appellees' motion to dismiss should not have been granted.

Accordingly, I would hold that appellant has stated a viable claim for the tort of wrongful discharge based upon a violation of public policy. I would reaffirm the view that we expressed in *Greeley* that the public policy excep-

tion to the employment-at-will doctrine need not be premised solely upon the violation of a specific statutory provision.

SWEENEY and RESNICK, JJ., concur in the foregoing dissenting opinion.