Daniel R. GALL, Plaintiff,

v.

QUAKER CITY CASTINGS,
INC., Defendant.

No. 4:94CV0862.

United States District Court,
N.D. Ohio,
Eastern Division.

Jan. 3, 1995.

Ira J. Mirkin, Bonnie Deutsch Burdman, Green, Haines, Sgambati, Murphy & Macala, Youngstown, OH, for plaintiff.

Margaret A. Kennedy, Maynard A. Buck, III, Joseph N. Gross, Benesch, Friedlander, Coplan & Aronoff, Cleveland, OH, for defendant.

---

1. The amended complaint contains two additional causes of action; one alleges a violation of the Family and Medical Leave Act of 1993, 29 U.S.C.

*ORDER*

MATIA, District Judge.

Before the Court is Plaintiff's Request for Reconsideration of Dismissal of Second Cause of Action ("Plaintiff's Request") (Doc. # 28). The second cause of action the Court dismissed in its October 11, 1994 decision was a claim for wrongful discharge in violation of Ohio public policy (Doc. # ).[1] The Court dismissed the claim on the basis that a public policy wrongful discharge claim is not actionable if the underlying statute already contains a civil remedy for the discharge. In support, the Court cited the following rulings: *Emser v. Curtis Industries, Inc.,* 774 F.Supp. 1076 (N.D.Ohio 1991); *Pozzobon v. Parts for Plastics, Inc.,* 770 F.Supp. 376 (N.D.Ohio 1991); *Provens v. Stark County Bd. of Mental Retardation and Developmental Disabilities,* 64 Ohio St.3d 252, 594 N.E.2d 959 (1992); *Rheinecker v. Forest Laboratories,* 826 F.Supp. 256 (S.D.Ohio 1993); and *Wilkerson v. Eaton Corp., et al.,* No. 65182, 1994 WL 77719 (Cuya.App. Mar. 10, 1994).

Plaintiff brings the within motion on the basis that several rulings issued by the Ohio Supreme Court subsequent to this Court's October 11, 1994 decision are "directly on point and squarely contrary to" the Court's prior opinion. Plaintiff's Request, at 2. Specifically, plaintiff contends that the Supreme Court has greatly expanded the public policy discharge doctrine to include the circumstances of the instant action. In support, plaintiff cites *Painter v. Graley,* 70 Ohio St.3d 377, 639 N.E.2d 51 (1994); *Wilkerson v. Eaton Corp.,* 70 Ohio St.3d 394, 639 N.E.2d 63 (1994); and *Sabo v. Schott,* 70 Ohio St.3d 527, 639 N.E.2d 783 (1994). The Court disagrees for the following reasons.

Ohio has traditionally ascribed to the employment-at-will doctrine, which allows an employer to discharge his employee " 'at will for any cause, at any time whatsoever, even if done in gross or reckless disregard of [his] employee's rights.' " *Phung v. Waste Mgt, Inc.,* 23 Ohio St.3d 100, 102, 491 N.E.2d 1114

§§ 2601 *et seq.* (the "FMLA"), the other alleges a violation of the Americans With Disabilities Act, cite.

(1986), quoting *Peterson v. Scott Constr. Co.,* 5 Ohio App.3d 203, 205, 451 N.E.2d 1236 (1982).

The Ohio Supreme Court first recognized an exception to the employment-at-will doctrine for public policy violations in *Greeley v. Miami Valley Maintenance Contractors, Inc.,* 49 Ohio St.3d 228, 551 N.E.2d 981 (1990). The issue in *Greeley* was whether an employee discharged in violation of Ohio Revised Code § 3113.213(D), a statute prohibiting an employer from discharging an employee on the basis of a wage withholding order, could maintain a wrongful discharge claim where the statute did not expressly authorize such an action. Reasoning that the legislature could not have intended to leave an employee discharged in violation of such a statute *without an effective remedy,* a majority of the Court held that public policy warrants an exception to the employment-at-will doctrine when an employee is discharged for a reason which is prohibited by statute. *Greeley,* Syllabus at 1. *See also Provens,* 64 Ohio St.3d at 261, 594 N.E.2d 959.

Shortly thereafter, the Supreme Court issued an opinion limiting the scope of "public policy" referenced in *Greeley.* In *Tulloh v. Goodyear Atomic Corp.,* 62 Ohio St.3d 541, 584 N.E.2d 729 (1992), a uranium materials handler brought a claim for wrongful discharge in violation of public policy against his employer alleging that he was terminated in retaliation for voicing his concerns about safety violations at the plant. Tulloh contended that his termination violated the public policy as established in *Greeley.* Noting that the action was brought prior to the enactment of O.R.C. § 4113.52 (the Whistleblower Act), however, the Court held that *absent statutory authority,* there is no common-law basis for a wrongful discharge claim based on violation of public policy.

The dissent in *Tulloh* (one in which Justices Douglas, Sweeney and Resnick concurred) merits our attention in that it presages the majority's analysis of the same

issue in *Painter v. Graley,* 70 Ohio St.3d 377, 639 N.E.2d 51 (1994). The *Tulloh* dissent argued that *Greeley* did not support the conclusion that a public policy wrongful discharge claim must be based upon the violation of a specific statutory provision.

In *Greeley,* we also stated that:

'Today, we only decide the question of a public policy exception to the employment-at-will doctrine based on violation of a specific statute. *This is not to say that there may not be other public policy exceptions to the doctrine but, of course, such exceptions would be required to be of equally serious import as the violation of a statute.*' (Emphasis added.) *Id.* at 234, 235, 551 N.E.2d at 987.

*Tulloh,* 62 Ohio St.3d at 547, 584 N.E.2d 729. Citing a plethora of statutory law mandating a safe workplace,[2] the dissent concluded that it would reaffirm the view expressed in *Greeley* that the public policy exception to the employment-at-will doctrine need not be premised solely upon the violation of a specific statutory provision.

Following *Tulloh,* the Ohio Supreme Court addressed the issue of whether the presence of statutory or administrative remedies for an employer's transgressions precluded a cause of action for a wrongful discharge based on a public policy violation. In *Provens,* a teacher brought a claim against her employer for racial discrimination and for violating Section 11, Article I of the Ohio Constitution by discharging her in retaliation for, *inter alia,* speaking out against her employer's policies.[3] The Court held that public employees do not have a private cause of action against their employer to redress violations of policies embodied in the Ohio Constitution when it is determined that there are other reasonably satisfactory remedies provided by statutory enactment and administrative process. Importantly, the Court noted that even though it was empowered to grant relief not expressly provided by the

---

**2.** Sections 34 and 35, Article II of the Ohio Constitution; O.R.C. §§ 4101.12, 4107.07, 4107.09, 4107.23, 4121.13, and 4121.17.

**3.** Section 11, Article I of the Ohio Constitution provides in pertinent part:

Every citizen may freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of the right; and no law shall be passed to restrain or abridge the liberty of speech, or of the press."

legislature, it was restrained from doing so where other statutory provisions and administrative procedures provide meaningful remedies. *Provens*, 64 Ohio St.3d at 255, 594 N.E.2d 959. The Court found that adequate remedies existed to redress Provens' employer's alleged transgressions at O.R.C. Chapters 4112 (the Civil Rights Commission Act) and 4117 (the Public Employees' Collective Bargaining Act).

> While the remedies provided the plaintiff here through the administrative process of a hearing before the CRC and through the arbitration process might be available through a civil proceeding, such difference shall not be controlling where, in the totality, it may be concluded that the public employee has been provided sufficiently fair and comprehensive remedies.

*Id.* at 260, 594 N.E.2d 959. Furthermore,

> [I]t is not incumbent upon this court to engage in the type of comparative analysis of the relative merits of various remedies that is invited by [the employee]. Rather, the more appropriate course for this court is to defer to the legislative process of weighing conflicting policy considerations and creating certain administrative bodies and processes for providing remedies for [aggrieved employees].

*Id.* at 261, 594 N.E.2d 959.

Provens further argued that the lower court decision granting summary judgment in favor of his employer should be reversed on the basis of *Greeley*. The Supreme Court stated that *Greeley* did not control the *Provens* case because the issues presented in *Greeley* were "distinctly dissimilar" from those presented in *Provens*. *Id.* That is, the *Greeley* Court recognized a cause of action for wrongful discharge in violation of public policy where no statutory remedies existed; whereas Provens had "sufficiently inclusive" legislative and regulatory remedies available to redress his employer's alleged transgressions. *Id.*

In 1994, a newly-composed Supreme Court revisited the issue addressed in *Tulloh* of whether any source of "public policy" existed beyond statutory law. In *Painter*, a public employee alleged that she was discharged solely because she became a candidate for public office, and that such discharge violated the Ohio Constitution as well as the public policy of Ohio. With respect to the constitutional issue, the Court held that the Ohio Constitution does not guarantee an unclassified public employee the right to seek elected office while continuing to hold public employment.

With respect to the "public policy" issue, the majority, which now included Justices Douglas, Sweeney and Resnick, resounded its interpretation of *Greeley* enunciated in the *Tulloh* dissent, and expressly overruled *Tulloh*.[4] That is, the new majority held that the existence of "public policy" may be discerned not only from statutes, but from federal and state constitutions, administrative rules and regulations, and the common law.

Notably absent from the *Painter* discussion was the issue of whether the existence of a statutory remedy precluded the maintenance of a public policy wrongful discharge claim. Indeed, the Court referenced, and left undisturbed, its holding in *Provens* that public employees do not have a cause of action against their employer to redress alleged violations of public policy where reasonably satisfactory statutory and administrative remedies already exist. *See Painter*, 70 Ohio St.3d at 380, 639 N.E.2d 51. Thus, *Painter* offers *absolutely no basis* for this Court to reconsider its prior decision dismissing said claim.

Plaintiff in the within matter argues that *Wilkerson* and *Sabo* also require this Court to reconsider and change its prior ruling. However, the Court finds *Sabo* factually distinguishable. With respect to *Wilkerson*, the *Wilkerson* majority opinion states in its entirety:

> The judgment of the court of appeals is reversed and the cause is remanded to the trial court to apply *Painter v. Graley*, 70 Ohio St.3d 377, 639 N.E.2d 51, decided today.

*Id.* at 394, 639 N.E.2d 63. After reviewing the appellate court decision in *Wilkerson*, 1994 WL 77719 1994 Ohio App. LEXIS 1043,

---

4. *See supra*, at 3, 4.

the undersigned agrees with the dissent of Supreme Court Justice Wright who states that

> the majority has acted hastily in this matter which involves nothing more than the propriety of a variety of procedural rulings by the trial court. In my view, *Painter v. Graley* (1994), 70 Ohio St.3d 377, 639 N.E.2d 51, is not involved here.

*Wilkerson* is an employment discrimination case. Employment discrimination cases generally require no more than six months of discovery. However, after three years of discovery and five months after a summary judgment motion had been filed in the *Wilkerson* case, plaintiffs, Roger and Carol Wilkerson, failed to file a brief in opposition to the summary judgment motion. Rather, on the day that the trial court ordered the opposition brief to be filed, counsel for the Wilkersons chose to request an extension of time in which to complete discovery after which they would file an opposition brief. The trial court refused the request and granted defendant's summary judgment motion.

A motion for summary judgment forces the nonmoving party to produce evidence on issues for which that party bears the burden of production at trial. Although the Wilkersons had more than ample time to conduct discovery and *in fact* conducted extensive discovery, they failed to file any of the fruits of their discovery with the trial court prior to the grant of summary judgment. Thus, the Wilkersons failed to support the allegations contained in their complaint or raise any issues of fact giving the trial court a basis upon which to deny the motion. Under the circumstances, it is hard to imagine that the trial court in *Wilkerson*, upon remand, will do anything other than grant summary judgment in favor of defendant yet another time.

Furthermore, because *Painter* is not dispositive of the issue before this Court, the Court finds that *Wilkerson* is not dispositive of the issue before this Court.

Finally, plaintiff in the instant case alleges that defendant's discharge violated the FMLA and the ADA, thereby giving rise to the claim for wrongful discharge pursuant to the "public policy" exception to the employment-at-will doctrine. Congress has obviously spoken on the issue of handicap discrimination and family medical leave in the workplace by enacting comprehensive statutes as legislative statements of public policy in this area. As the *Painter* Court noted, "Judicial policy preferences may not be used to override valid legislative enactments, for the [legislature] should be the *final arbiter of public policy*." *Painter*, 70 Ohio St.3d at 385, 639 N.E.2d 51, quoting *State v. Sorgala*, 50 Ohio St.3d 222, 223, 553 N.E.2d 672 (1990) (emphasis added). Because the legislature has enunciated public policy and provided remedial schemes to protect employees in this area, this Court will not override the scheme on the basis of its own policy preferences.

Accordingly, this Court will not disregard the *Provens* holding (*i.e.*, the availability of statutory or administrative remedies preclude a cause of action for wrongful discharge based on a violation of public policy) until such time as the Ohio Supreme Court addresses this issue directly and overrules the precedent it established only two and one-half years ago.

For all the aforementioned reasons, the Court hereby DENIES Plaintiff's Request for Reconsideration of Dismissal of Second Cause of Action (Doc. # 28).

IT IS SO ORDERED.