DECISION AND JUDGMENT ENTRY
This case is before the court on appeal from a judgment of the Lucas County Court of Common Pleas which granted defendant-appellee, St. Vincent Medical Center, summary judgment on plaintiff-appellant Robert O. Urfer's complaint for breach of contract. From that judgment, appellant assigns the following as error:
 "I. THE TRIAL COURT FAILED TO RECOGNIZE GENUINE ISSUES OF MATERIAL FACT REGARDING THE EXISTENCE OF PUBLIC POLICY VIOLATIONS WHICH WOULD PROVIDE AN EXCEPTION TO THE EMPLOYMENT-AT-WILL DOCTRINE.
 "II. THE TRIAL COURT ERRED BY FAILING TO RECOGNIZE THAT APPELLANT WAS NOT REQUIRED TO EXHAUST INTERNAL REVIEW PROCEDURES PRIOR TO COMMENCING SUIT WHEN TO DO SO WOULD CONSTITUTE A VAIN ACT."
The undisputed facts of this case are as follows. Appellant began working at St. Vincent in 1966 while he was still a student of pharmacology. Thereafter, from 1969 until his termination on September 25, 1997, appellant worked as a pharmacist at St. Vincent. During the last ten years of his employment at St. Vincent, appellant was the supervisor or "team leader" of the outpatient pharmacy program. In that position, appellant oversaw anywhere from eight to fifteen employees and managed the operation of three pharmacies. On September 19, 1991, appellant received the most recent edition of the St. Vincent Medical Center Employee Handbook. Along with the receipt of the handbook, appellant signed the following acknowledgment:
 "I understand and acknowledge that no statement in this Employee Handbook shall be construed, interpreted or applied as a contract of employment between myself and St. Vincent Medical Center. This Employee Handbook provides the most recent statement of current policies as of the date of this handbook and supersedes any prior handbooks of any kind.
 "I understand I am an employee at will and either I or St. Vincent Medical Center can terminate the employment relationship at any time for any reason. I further understand that no representative of St. Vincent Medical Center has the authority to enter into an agreement that changes or is contrary to the above."
On April 7, 1997, appellant received a memorandum from Louis Kynard, his immediate supervisor, in which Kynard identified several issues related to appellant's mis-communication or non-communication leading to problems internally in the department. In particular, Kynard noted appellant's failure to notify pharmacy managers that he was taking a one week vacation in March and his failure to adequately communicate with the staff of the Mercy Outpatient Pharmacy. Subsequently, on May 20, 1997, appellant received an average performance evaluation. The "Supervisor's Comments" section of the evaluation reads:
 "Robert has many years of experience under his belt, and has set up two of the three ambulatory pharmacies we currently operate. However, we are in a changing environment and the intensity needed to manage three ambulatory pharmacies is great. For the network of ambulatory pharmacies to be successful, Robert needs to play a greater role in managing and a lesser role in staffing. This year will be a decision year for Robert in this regard, due to the fact SVMMC will be opening another ambulatory pharmacy in suburban Toledo and more time for management of that area will be necessary."
The evaluation then included a "Personal Development Plan" for appellant which reads:
 "Much work remains for Robert in 1997. His personal development plan should include:
 "1. Greater focus on the management end of the ambulatory pharmacies. He needs to function less as a staff pharmacist and more as a manager.
 "2. Development of the business plan for the planned Westchester Pharmacy. Although this is currently in the works, the plan is not yet complete.
 "3. Implement and maintain a timely performance appraisal process for the ambulatory areas. This includes review of the current technical standards and/or development of those standards."
Thereafter, on June 9, 1997, Larry Pesko, the Administrative Director of the Department of Pharmaceutical Care and Kynard's superior, sent appellant a letter documenting a meeting that he recently had with appellant regarding appellant's failure to meet a May 23, 1997 deadline for presenting a proposal regarding the proposed Westchester Pharmacy. In this letter, Pesko noted: "Bob, the quality and timeliness of your work must improve. You are responsible for a very important part of our pharmacy operation, one that cannot be compromised by missed deadlines and unfinished work." Ten days later, Pesko sent appellant another letter, this time regarding the number of prescription errors that had recently occurred in the ambulatory care pharmacy and appellant's need to document those errors.
On September 11, 1997, appellant interviewed Sarah Schramm for a position as a part-time pharmacy technician at the new Westchester Pharmacy. Following the interview, Schramm wrote a letter to Kynard regarding what she termed appellant's "unprofessional way of interviewing." Schramm stated that appellant discussed matters other than the available job position, told her if she wanted benefits she should look in the private sector, and did not have her resume with him. Schramm then relayed to Kynard that when she asked appellant if he was interested in hiring her he responded "Let me be totally honest with you, I am hesitant to hire you because of your high level personality and the way you look." When Schramm asked appellant to explain, he stated that she resembled a former employee who did not work out. Schramm's letter then revealed that the day after the interview she called appellant to discuss the interview and tape recorded the conversation. Again, appellant's manner was inappropriate. Subsequently, Larry Pesko confronted appellant about the interview. In his deposition, which was submitted as evidence in the proceedings below, Pesko stated that appellant admitted that he had made the comments to Schramm regarding her looks and personality. Pesko then told appellant to write down exactly what took place during the interview. On September 18, 1997, appellant submitted a memorandum to Pesko regarding the interview. That memorandum, however, omitted any admission of comments made to Schramm. Pesko then suspended appellant pending an investigation of the Schramm incident.
Thereafter, Kimberly Edwards, the Human Resources Representative for appellant's department, began an investigation into Schramm's allegations. Edwards met with Schramm and listened to the tape recording of Schramm's telephone conversation with appellant. Edwards found Schramm to be credible and found the tape recording confirmed Schramm's allegations. Edwards relayed her findings to Pesko and Paul Palmisano, the Vice President of Human Resources. Based on appellant's recent history of job performance problems and the unprofessional and inappropriate comments he made to Schramm during the interview, Pesko terminated appellant's employment, effective September 25, 1997.
On September 8, 1998, appellant filed a complaint against appellee for breach of contract and fraud. In his first claim for relief, appellant alleged that appellee's agents had evaluated him unfairly and dishonestly and that appellee therefore breached its contract with appellant. In his second claim for relief, appellant alleged that appellee had defrauded him by promising to treat him honestly and fairly when in fact it determined to end his employment regardless of his performance.
Subsequently, appellee filed a motion for summary judgment. With regard to the first claim for relief, appellee argued that because appellant was an employee at-will, he could not recover for breach of contract. With regard to the fraud claim, appellee asserted that appellant had failed to state a claim upon which relief could be granted. Appellee supported its motion with the deposition of appellant and the affidavit of Kimberly Edwards. Appellant responded with a brief in opposition supported by the depositions of Lawrence Pesko and Kimberly Edwards and his own affidavit. Appellant argued that the real reason for his termination was the fact that he had been indicted by the Lucas County Grand Jury on May 23, 1997 for improperly dispensing cough syrup from his own pharmacy, Orchard Drug. He therefore asserted that appellee breached a duty to exercise good faith in its dealings with appellant by not revealing the true reason for firing him. Appellant, however, did not support this allegation with any evidence that he was terminated because of the indictment. Rather, Pesko and Edwards continually asserted in their depositions that appellant was terminated because of his recent poor job performance. They further stated that appellant's conduct during the interview with Schramm was the proverbial "straw that broke the camel's back." In his brief in opposition, appellant further withdrew his second claim for relief alleging fraud.
On January 21, 2000, the trial court issued an opinion and judgment entry granting appellee's motion for summary judgment. In so holding, the court found that the undisputed facts revealed that appellant was an employee at-will, that he had not established the applicability of any of the exceptions to the employment-at-will doctrine and that appellant had therefore not presented any evidence that appellee had breached a contract with appellant. The court further found that because appellant failed to exhaust the internal review procedure available to him before bringing his lawsuit, the breach of contract claim for relief should be dismissed on that ground alone. It is from this judgment that appellant now appeals.
In his first assignment of error, appellant asserts that the trial court erred in granting appellee summary judgment where the facts and circumstances of this case support the existence of a public policy exception to the employment-at-will doctrine.
In reviewing the ruling on a motion for summary judgment, this court must apply the same standard as the trial court. Lorain Natl. Bank v.Saratoga Apts. (1989), 61 Ohio App.3d 127, 129. Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). The party moving for summary judgment under Civ.R. 56 bears the burden of showing that there is no genuine issue of material fact on the essential elements of the nonmoving party's claim. _Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. If the moving party satisfies this burden, the nonmoving party has a reciprocal burden, as outlined in Civ.R. 56(E), to set forth specific facts showing that there is a genuine issue for trial. Id.
In his complaint, appellant alleged that appellee breached its contract with him "* * * by allowing its agents to embark upon a course of conduct intended to terminate plaintiff's employment with defendant regardless of his job performance. He was evaluated unfairly and dishonestly." Essentially, appellant asserted that appellee had an implied contractual obligation to deal with appellant honestly and fairly and that appellee breached this obligation when it fired appellant.
Because employment is presumed to be at-will, "the party asserting an implied contract of employment has a heavy burden. He must prove the existence of each element necessary to the formation of a contract."Penwell v. Amherst Hosp. (1992), 84 Ohio App.3d 16, 21. Therefore, the party relying on an implied contract must demonstrate the existence of each element necessary to the formation of a contract including, interalia, the exchange of bilateral promises, consideration and mutual assent. Gargasz v. Nordson Corp. (1991), 68 Ohio App.3d 149, 154.
Determination of an implied contract of employment relies on evidence of the history of relations between the employer and employee and the facts and circumstances surrounding the employment-at-will relationship.Mers v. Dispatch Printing Co. (1985), 19 Ohio St.3d 100, 104. The facts and circumstances surrounding the employment include "the character of the employment, custom, the course of dealing between the parties, company policy, or any other fact which may illuminate the question."Id. Other considerations include "information contained in employee handbooks, oral representations made by supervisory personnel that employees have been promised job security in exchange for good performance, and written assurances reflecting company policy." Wrightv. Honda of Am. Mfg., Inc. (1995), 73 Ohio St.3d 571, 574-575.
In the present case it is undisputed that appellant was an employee at-will. In September 1991, he signed a statement acknowledging his understanding of his status as an at-will employee. Moreover, appellant presented no evidence in the proceedings below to support an implication that appellee had contractually agreed to deal with him honestly and fairly. Accordingly, the trial court did not err in granting appellee summary judgment on appellant's breach of contract claim.
Appellant further contends, however, that the trial court should have recognized a public policy exception to the employment-at-will doctrine. In particular, appellant asserts that public policy should demand that an employer be truthful in its dealings with its employees with regard to the reasons for an employee's termination. Initially we note, however, that appellant did not present any evidence in support of his assertion that appellee was untruthful in its reasons for terminating him. Assuming that the evidence presented in the proceedings below could be construed as supporting appellant's position, we reject appellant's argument for the following reason.
In support of his argument, appellant cites the Supreme Court of Ohio's decision in Painter v. Graley (1994), 70 Ohio St.3d 377 . Appellant asserts that in this case, the Supreme Court of Ohio recognized an exception to the doctrine of employment at-will which provides that discipline and termination in violation of public policy can be actionable. Appellant's reliance on Painter is misplaced. In Painter
the Supreme Court held at paragraphs two and three of the syllabus:
 "2. To state a claim of wrongful discharge in violation of public policy, a plaintiff must allege facts demonstrating that the employer's act of discharging him contravened a `clear public policy.' (Greeley v. Miami Valley Maintenance Contractors, Inc. [1990], 49 Ohio St.3d 228, 551 N.E.2d 981, affirmed and followed.)
 "3. `Clear public policy' sufficient to justify an exception to the employment-at- will doctrine is not limited to public policy expressed by the General Assembly in the form of statutory enactments, but may also be discerned as a matter of law based on other sources, such as the Constitutions of Ohio and the United States, administrative rules and regulations, and the common law. (Tulloh v. Goodyear Atomic Corp. [1992], 62 Ohio St.3d 541, 584 N.E.2d 729, overruled.)"
Accordingly, a cause of action for wrongful discharge in violation of public policy is a tort that must be pled by alleging facts demonstrating that an employer's discharge of the plaintiff violated a sufficiently clear public policy.
In the present case, appellant's complaint did not set forth a cause of action for wrongful discharge in violation of public policy. Moreover, assuming arguendo that appellant's complaint could be construed as pleading such a tort, neither appellant's complaint nor his memorandum in opposition to summary judgment demonstrated a sufficiently clear public policy in favor of an employer's duty to honestly and fairly deal with its employees. That is, no such duty or public policy can be found in the statutes or administrative rules and regulations of this state, the Ohio or United States Constitutions, or the common law. Rather, it is noteworthy that the Supreme Court of Ohio in _Mers, supra at 105, refused to recognize the duty to act in good faith as an exception to the employment-at-will doctrine.
Accordingly, construing the evidence in a light most favorable to appellant, reasonable minds could only conclude that appellee was entitled to judgment as a matter of law and the trial court did not err in granting appellee's motion for summary judgment. The first assignment of error is not well-taken.
In his second assignment of error, appellant challenges the trial court's conclusion that appellant's failure to exhaust the internal review procedures available to him before bringing this lawsuit was reason enough to dismiss the case. Given our ruling under the first assignment of error, we need not address this issue and find the second assignment of error not well- taken.
On consideration whereof, the court finds substantial justice has been done the party complaining and the judgment of the Lucas County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellant.
 JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, J., JUDGE
Melvin L. Resnick, J., Mark L. Pietrykowski, J., JUDGE, CONCUR.