JOURNAL ENTRY OPINION
{¶ 1} Appellant, Brenda Goins ("Goins"), appeals the summary judgment granted to appellee, Cuyahoga Metropolitan Housing Authority ("CMHA"), only as to the issue of wrongful discharge in violation of public policy.[1]
 {¶ 2} In July 2000, Goins was hired by CMHA as a housing services eligibility manager on a probationary basis. Prior to her commencement of employment, Goins was informed that she would have to satisfactorily complete a twelve-month probationary period and that her employment with CMHA was at-will. Throughout her employment at CMHA, Goins reported directly to her supervisor, Georgia Butler ("Butler"), director of housing services.
 {¶ 3} In November 2000, Goins verbally notified George A. Phillips, Deputy Executive Director of Housing Operations and Development at CMHA ("Phillips"), and Timothy Viskocil, Director of Human Resources at CMHA ("Viskocil"), that she was encountering problems with her supervisor, Butler. In particular, Goins verbally informed Phillips and Viskocil that Butler had instructed her to engage in various activities that she believed violated the regulations issued by the Department of Housing and Urban Development ("HUD"), including instructing Goins to place housing applicants out of turn, improperly verify information concerning housing applicants prior to their placement, incorrectly place housing applicants as it relates to designated housing, and place applicants prior to performing proper criminal background checks.[2] Although it is unclear from the record specifically what Goins was instructed by Butler to do, it appears that on at least one occasion, Goins questioned Butler's instructions to send out unit offer letters to housing applicants and went to Viskocil and Phillips for clarification of Butler's instructions before sending them out. On November 9, 2000, Phillips responded to Goins' verbal complaint and agreed with Goins that she not send out the letters until Viskocil, Phillips, and Goins could all meet and get an agreement on the letters; however, even Phillips informed Goins that the letters Butler instructed her to send out were not "illegal, or immoral." Instead, Phillips informed Goins that other than Goins' "personal convictions," there is no real reason that the letters should not be sent out. Further, Phillips directed Goins to not interfere with the letters being sent out by other CMHA employees.
 {¶ 4} On January 5, 2001, a probationary period performance appraisal was completed by Butler of Goins. The evaluation gave Goins "unsatisfactory" ratings for the five general categories of dependability, behavior pattern, quality, productivity, and suitability for the position. For example, Goins was rated "unsatisfactory" under the category "behavior pattern" with Butler commenting as follows:
 {¶ 5} "Demonstrates anwillingness [sic] to take instructions from immediate supervisor[.] Does not demonstrate good judgement [sic] as required."
 {¶ 6} Goins was also rated "unsatisfactory" under the category "suitability for position" with Butler commenting as follows:
 {¶ 7} "Demonstrates inability to follow instructions or carry out actions as delegated. Frequently challenges authority and/or delegation of work. Does not appear receptive to following guidelines as established or hold staff accountable to such."
 {¶ 8} In addition, the evaluation specifically indicated a "No" to the question of whether Goins should be recommended for regular employment.
 {¶ 9} In response to the evaluation, Goins prepared a written memorandum to Viskocil, dated January 18, 2001. In her memorandum, Goins stated that the "unsatisfactory evaluation is totally unwarranted, unfounded, and retaliatory." Goins claimed that Butler's evaluation is a retaliation against her for several reasons, including the issue with Butler's instructions to send out the unit letters and Butler's alleged unprofessional conduct towards Goins. Under the heading titled "Mismanagement" in her memorandum, Goins claims, without giving examples, that Butler instructed her to do things that are "clearly outside of agency guidelines and HUD regulations" and she questioned whether what Butler requested is legal. In addition, Goins claims in her memorandum that Butler is unprofessional toward her by talking down to Goins, being petty, and constantly changing her mind.
 {¶ 10} On January 29, 2001, Viskocil met with Goins to discuss the concerns raised in her memorandum and recommended that Goins detail those concerns further in writing. On February 26, 2001, Goins submitted a written grievance, where she claimed she was subjected to a hostile work environment because of Butler's alleged unprofessional behavior and mismanagement. According to Goins' grievance, Butler informed Goins and her staff to interview and refer applicants for housing out of turn, which Goins claims does not comply with HUD regulations and CMHA guidelines.
 {¶ 11} After an investigation of Goins' grievance, Viskocil submitted a memorandum dated March 2, 2001 to Goins, stating that he found her complaints to be unsupported and that Goins was not subjected to a hostile work environment. For instance, according to Butler, HUD approved referring applicants from Severance ("out of turn") because there were no Ambleside applicants, and that any interviews conducted were without Butler's knowledge. Moreover, according to Viskocil's investigation, the deadlines and parameters given to Goins from Butler are in line with the demands of the job and no different from the expectations of any other management member under Butler's supervision.
 {¶ 12} Thereafter, on March 13, 2001, CMHA terminated Goins. The termination notice provided as follows:
 {¶ 13} "The reason for your termination is a failure to satisfactorily complete your probationary period. Section 11.04(B) of the Administrative Order states, `During a probationary period an employee may be separated from service at any time for cause(s) relating to performance of duties or for personal conduct detrimental to the Authority without right of appeal or hearing.' Specifically, you have continually refused to carry out work assignments and display [sic] willful disobedience of direct orders issued by your supervisor."
 {¶ 14} Goins filed her complaint against CMHA, alleging wrongful discharge in violation of public policy, intentional infliction of emotional distress, and punitive damages. The trial court granted CMHA's motion for summary judgment, holding inter alia that Goins' claims for wrongful discharge in violation of public policy did not fit within the workplace safety exception.
 {¶ 15} Goins now appeals and contends, in her sole assignment of error, that the trial court erred in granting CMHA's motion for summary judgment because genuine issues of material fact remain as to whether CMHA terminated Goins in violation of a public policy that did not implicate workplace safety. For the following reasons, we affirm the decision of the trial court.
 {¶ 16} First, our review of summary judgment motions is de novo. Camastro v. Guyuron, Cuyahoga App. No. 80915, 2003-Ohio-27. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." Id., quoting Mergenthal v. Star Banc Corp. (1997),122 Ohio App.3d 100, 103, 701 N.E.2d 383.
 {¶ 17} Second, the common-law doctrine of employment-at-will generally governs employment relationships in Ohio. Under this doctrine, a general or indefinite hiring is terminable at the will of either the employee or the employer; thus, a discharge without cause does not give rise to an action for damages.Collins v. Rizkana (1995), 73 Ohio St.3d 65, 67,652 N.E.2d 653; see, also, Mers v. Dispatch Printing Co. (1985),19 Ohio St.3d 100, 483 N.E.2d 150, paragraph one of the syllabus. In response to perceived abuses of the at-will principle, Ohio (and other states) created an exception that permitted a discharged employee to assert a tort cause of action for wrongful discharge in violation of a fundamental public policy. Greeley v. MiamiValley Maintenance Contrs., Inc. (1990), 49 Ohio St.3d 228,551 N.E.2d 981. Specifically, the Greeley court held that "public policy warrants an exception to the employment-at-will doctrine when an employee is discharged or disciplined for a reason which is prohibited by statute." Greeley, at paragraph one of the syllabus. Thus, after Greeley, an employee terminated in violation of a statute could maintain a common-law action for damages.
 {¶ 18} After Greeley, the Supreme Court of Ohio expanded and otherwise refined the scope of the wrongful-discharge tort and held that a valid Greeley claim is not limited to situations where the discharge violates a statute. Instead, the "clear public policy" sufficient to justify a wrongful-discharge claim "may also be discerned as a matter of law based on other sources, such as the Constitutions of Ohio and the United States, administrative rules and regulations, and the common law."Painter v. Graley (1994), 70 Ohio St.3d 377, 639 N.E.2d 51, paragraph three of the syllabus (overruling Tulloh v. GoodyearAtomic Corp. (1992), 62 Ohio St.3d 541, 584 N.E.2d 729).Painter also suggested defining the tort by requiring the plaintiff to show four elements for a prima facie case:
 {¶ 19} "1. That clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element).
 {¶ 20} "2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element).
 {¶ 21} "3. The plaintiff's dismissal was motivated by conduct related to the public policy (the causation element).
 {¶ 22} "4. The employer lacked overriding legitimate business justification for the dismissal (the overriding justification element)." Painter, 70 Ohio St.3d at 384.
 {¶ 23} According to Ohio law, the clarity and jeopardy elements are questions of law to be decided by the court while factual issues relating to the causation and overriding justification elements are generally for the trier of fact to resolve. Collins, 73 Ohio St.3d at 69-70.
 {¶ 24} Contrary to Goins' assertion, the initial element of her prima facie case, clarity, is lacking. Here, the public policy is not clear. Goins contends that Butler instructed her to engage in activity that violated HUD regulations and CMHA guidelines. With respect to the HUD regulations, Goins asserts that Section 960.206, Title 24, C.F.R. was violated when Butler requested Goins to refer applicants out of turn, and Goins was retaliated against for raising a concern as to the legality of Butler's request. However, upon review of Section 960.206, Title 24, C.F.R. which is titled "Waiting list: Local preferences in admission to public housing program," CMHA (or other public housing authority) "may adopt a system of local preferences for selection of families admitted to" CMHA's housing program. See Section 960.206(a), Title 24, C.F.R. (emphasis added). This system of local preferences, if CMHA (or other public housing authority) so chooses to adopt, must then be based on "local needs and priorities as determined" by CMHA. See Section 960.206(a), Title 24, C.F.R. There is nothing in Section 960.206, Title 24, C.F.R. that prohibits CMHA from establishing local preferences according to CMHA's guidelines, nor is there anything that mandates what the local preferences are based upon, other than "generally accepted data sources." See Section 960.206(a), Title 24, C.F.R.
 {¶ 25} Further, Goins does not provide (either by way of allegation or evidence) what CMHA guidelines Butler allegedly violated. Instead, Goins asserts that CMHA was in violation of proper selection of housing applicants and based her assertion on an internal audit conducted of CMHA for the time period covering June 12, 2000 through July 14, 2000, in which one of the findings determined that "[r]esidents do not appear to be selected for housing in any systematic, orderly manner." The internal audit also found that while CMHA's waiting list was updated daily, it "does not appear that the list is used effectively to determine who is next to be housed," and that upon review of the waiting list, the internal audit was unable to determine how housing applicants were selected. The internal audit also mandated corrective action to be taken by CMHA, which required CMHA to create an active waiting list for orderly housing of applicants so that at any given time application specialists could determine which individuals are being considered for housing.
 {¶ 26} Unlike Goins' assertion, there is no indication in the internal audit that cites CMHA in violation of any laws or regulations, nor is there any indication that the internal audit cites CMHA in violation of its own policies or guidelines. Instead, the internal audit made findings and issued corrective actions to be taken by CMHA. Without more, it is entirely unclear (and, in fact, murky) as to what violation, if any, Butler's instructions to Goins committed.
 {¶ 27} Likewise, the public policy exception asserted by Goins is one that is not founded in the Constitutions of Ohio and the United States, administrative rules and regulations, or the common law. Perhaps the public policy that Goins believes exists is one that allows subordinates to question and challenge the directives of their supervisors. It is unlikely, however, that Goins' continued insubordination and refusal to carry out directives of her supervisors, especially when such refusal is unwarranted by the very rule by which CMHA is regulated, is a fundamental or clear public policy. Because Goins failed to prove that a clear public policy exists, she is unable to establish a prima facie case of wrongful discharge in violation of public policy. Thus, the decision of the trial court granting summary judgment in favor of CMHA is affirmed.[3]
 {¶ 28} The judgment is affirmed.
Judgment affirmed.
 ANN DYKE and SEAN C. GALLAGHER, JJ., concur.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
[1] In her appellate brief, Goins specifically asserts that she is not challenging the trial court's dismissal of her claims for intentional infliction of emotional distress and punitive damages.
[2] These activities are alleged in Goins' complaint, but there is nothing more than her allegations in the record that supports her claims.
[3] Because we review summary judgments de novo, it is immaterial that the trial court, as asserted by Goins, improperly found that Goins' public policy exception to her at-will employment failed because it did not implicate workplace safety.